## TAYLOR INSTRUMENT COMPANIES v. FAWLEY–BROST CO.

### No. 8298.

Circuit Court of Appeals, Seventh Circuit.
Nov. 15, 1943.

Albert I. Kegan and Esther Oswianza Kegan, both of Chicago, Ill., for appellant.

Edward S. Rogers, William T. Woodson and James H. Rogers, all of Chicago, Ill. (D. Clyde Jones, of Rochester, N. Y., of counsel), for appellee.

Before MAJOR and MINTON, Circuit Judges, and LINDLEY, District Judge.

MAJOR, Circuit Judge.

Plaintiff brought this action to recover damages for and to enjoin alleged copyright and trademark infringement and alleged unfair competition in connection with the manufacture and sale of charts used in recording machinery. Defendant denied the charges and counterclaimed for certain relief, including a declaratory judgment that such charts were not copyrightable. The court below decided all issues in favor of the plaintiff and entered an

interlocutory judgment from which defendant appeals.

Plaintiff is a manufacturer and vendor of a recording thermometer which is a combination of numerous elements, including a clock which shows the time, a thermometer which measures and indicates the temperature, and a writing machine which draws upon the chart a graphical record disclosing the hourly temperature. The chart is circular in form and about ten inches in diameter. It has arc lines extending from the center outwardly by which the time is indicated, and lines extending in a circle around the chart by which the temperature is indicated. The writing machine feature includes a pen or stylus which, co-acting with other elements of the machine, produces a traced line which indicates the temperature at different times during any desired period. The chart upon which this record is made is commonly known in the trade as such, although it appears more accurate to describe it as a paper dial.

Plaintiff prints its copyright notice upon charts manufactured by it, in conformity with copyright certificates issued by the United States Registrar of Copyrights. Plaintiff relies upon eighteen of such copyright certificates out of several hundred which it has procured. Plaintiff also prints upon its charts its registered trademark "Taylor" and a number, which indicates the type of machine with which the chart is to be used.

Charts manufactured and sold by the defendant are admittedly copied from plaintiff's charts in so far as the circular and arc lines are concerned. Defendant omits, however, plaintiff's trademark and copyright notice.[1] Defendant prints on its charts in bold-faced type, "Fawley-Brost Co., Chicago." It also prints upon the chart a number for the purpose of indicating the type of machine, whether manufactured by plaintiff or others, for which the chart is designed. This means that defendant's number corresponds with plaintiff's number where the charts are manufactured for the same type of plaintiff's machine. Some of defendant's charts also bear the letter "T," which indicates that they are designed for use on a machine manufactured and sold by the plaintiff.

The statement thus made appears sufficient for a consideration of defendant's contention that plaintiff's copyrights are invalid and of no effect. (Other facts will be subsequently stated relative to the charge of trademark infringement and unfair competition.) Plaintiff, as might be expected, relies heavily upon the findings and conclusion of the trial court. It may be said, so we think, that there is little, if any, dispute concerning the facts of the case. The dispute is largely dependent upon the conclusion to be drawn from such facts.

Art. 1, Sec. 8, Clause 8 of the Constitution of the United States empowers Congress "To promote the Progress of Science and useful Arts, by securing for limited Times to Authors and Inventors the exclusive Right to their respective Writings and Discoveries." In the exercise of the power thus conferred, Congress has legislated with reference to copyrights (Title 17 U.S.C.A. § 1 et seq.), thereby furnishing protection to "Authors" in their "Writings," and has legislated with reference to patents (Title 35 U.S.C.A. § 31 et seq.), thereby furnishing protection to "Inventors" in their "Discoveries." Thus it appears that Congress has provided two separate and distinct fields of protection, the copyright and the patent. In the former (Sec. 4), it has placed "all the writings of an author," and in the latter (Sec. 31), inventions and discoveries of "any new and useful art, machine, manufacture * * * or any new and useful improvements thereof * * *." While it may be difficult to determine in which field protection must be sought, it is plain, so we think, that it must be in one or the other; it cannot be found in both. In other words, there is no overlapping territory, even though the line of separation may in some instances be difficult of exact ascertainment.

Defendant bottoms its contention that the charts in suit are not the proper subject of copyright, largely upon the oft-cited and much quoted case of Baker v. Selden, 101 U.S. 99, 25 L.Ed. 841, and cases which have followed that decision. There, the distinction between copyright and patent protection is stated thus (101 U.S. at page 105, 25 L.Ed. 841): "The description of

---

[1] Defendant on some of its charts printed a notice of a copyright owned by it. We understand that it has ceased this practice, and in any event it appears immaterial.

the art in a book, though entitled to the benefit of copyright, lays no foundation for an exclusive claim to the art itself. The object of the one is explanation; the object of the other is use. The former may be secured by copyright. The latter can only be secured, if it can be secured at all, by letters-patent."

The reason assigned by the court for such distinction is (101 U.S. at page 102, 25 L.Ed. 841): "To give to the author of the book an exclusive property in the art described therein, when no examination of its novelty has ever been officially made, would be a surprise and a fraud upon the public. That is the province of letters-patent, not of copyright. The claim to an invention or discovery of an art or manufacture must be subjected to the examination of the Patent Office before an exclusive right therein can be obtained; and it can only be secured by a patent from the government."

In Brief English Systems, Inc. v. Owen, et al., 2 Cir., 48 F.2d 555, 556, the court stated: " * * * it may be said that the way to obtain the exclusive property right to an art, as distinguished from a description of the art, is by letters patent and not by copyright." This same distinction has been recognized in Arnstein v. Edward B. Marks Music Corp., 2 Cir., 82 F.2d 275, Amberg File & Index Co. v. Shea Smith & Co., 7 Cir., 82 F. 314, and in Dymow v. Bolton, et al., 2 Cir., 11 F.2d 690, 691. In the latter case, the court said: "Just as a patent affords protection only to the means of reducing an inventive idea to practice, so the copyright law protects the means of expressing an idea * * *."

█ Plaintiff points out that Congress in 1909, subsequent to the decisions in Baker and kindred cases, amended Sec. 5 of the Copyright Act by including Par. (i), "Drawings or plastic works of a scientific or technical character," and that such decisions are no longer controlling. In the absence, however, of any authority to the contrary, we are of the view that the field of copyright protection was not enlarged by this amendment. The field is still confined to "the writings of an Author." That such is the case is evident from the concluding paragraph of Sec. 5, which reads: "The above specifications shall not be held to limit the subject matter of copyright as defined in section 4 of this title * * *." Furthermore, the pronouncement of the

Baker case has recently been recognized and applied by two District Courts. Clair v. Philadelphia Storage Battery Co., 43 F.Supp. 286, and Muller v. Triborough Bridge Authority, 43 F.Supp. 298. Therefore, we are of the view that the rule of the Baker case is the rule of today. None of the cases relied upon by the plaintiff announces a contrary rule. None of them, so far as we are able to ascertain, has sustained a copyright upon an object which did not teach or convey information.

This brings us to a consideration of whether plaintiff's copyrighted chart is an object of explanation or an object of use. If the former, it is subject to copyright protection; if the latter, it is not entitled to such protection, but the same must be obtained, if at all, by letters-patent. The character of the chart is aptly stated in a letter written by plaintiff's counsel to defendant's counsel shortly prior to the commencement of the instant suit. It states, "The chart in question is, in effect, a replaceable dial which cooperates with the pointer or index of the instrument, to indicate a temperature reading. The fact that this pointer carries an inked stylus to make a record of this indicated temperature, does not change the replaceable dial into a blank book."

The proof, as well as an examination of plaintiff's recording thermometer, including its chart, leaves no room for doubt but that the latter is a mechanical element of the instrument of which it is an integral part. The chart is as indispensable to the operation of a recording thermometer as are any of the other elements. They are interdependent. As was stated by plaintiff's president: "I would say that you must have the pen and you must have the chart and the two together will determine the temperature."

█ Notwithstanding plaintiff's rather feeble argument to the contrary, the chart neither teaches nor explains the use of the art. It is an essential element of the machine; it is the art itself. It is our judgment that plaintiff's charts are not the proper subject of copyright and that the recognition of an exclusive property right therein would be, in the words of the Supreme Court in the Baker case, "a surprise and a fraud upon the public."

Defendant introduced some twenty-five patents, the subject matter of which was recording thermometers which displayed representations of charts. All of such

patents have expired and it seems reasonable to think that plaintiff's chart is extremely old in the art. Plaintiff, however, seeks to justify its copyright protection by pointing out that none of these patents would give the defendant measurements necessary for printing the charts alleged to infringe. This argument, if true, ignores the fact that it now seeks protection in the copyright field for an art long protected in the field of patents, and where undoubtedly it still belongs. The absurdity of plaintiff's position appears from the fact that each new model of machine, whether manufactured by plaintiff or others, requires a chart with different measurements. As a result, these different measurements afford the excuse for obtaining another copyright. Thus is produced the intolerable situation that plaintiff may extend indefinitely the fifty-six years of protection afforded by the copyright laws. In fact, the protection thus afforded would be without end.

What we have just said is perhaps unnecessary to a decision of the question under consideration. It is, however, a graphic illustration of the wrong which can be, and which we think in the instant case has been, perpetrated by allowing plaintiff copyright protection upon a mechanical device which clearly belongs exclusively in the patent field. Judge Chitty, in Davis v. Comitti, 52 L.T.Rep.,N.S., 539, 540, used this pertinent language: "It would be strange if the inventor, who, by means of a patent could obtain a monopoly for his invention for the term of fourteen years, was enabled to obtain a distinct right of copyright for a period of at least forty-two years for the letterpress on the dial, or some other essential part of his invention, and thus, after the expiration of the period for which his patent was granted, be in a position to restrain the serviceable user of some letterpress which formed an essential part of his invention. In my opinion the statutes do not lead to any such anomaly * * *."

The fact, if such it be, that plaintiff's chart has long since lost its patentable status does not impair the conclusion that it has no place in the copyright field. In fact, it strengthens such conclusion, even though it leaves plaintiff unprotected.

On the question of trademark infringement, there again appears little, if any, dispute as to the facts. The court concluded, however, that "the use by the defendant of the name 'Taylor' and the abbreviations thereof, 'Tay' and 'T', by the defendant constitutes a colorable imitation of and an infringement of plaintiff's registered trade-mark 'Taylor'." The validity of plaintiff's registered trademark "Taylor" is not in dispute. Also, there is no proof or contention that defendant used such trademark upon the charts manufactured by it. The most shown in this respect is that the defendant on some of its charts used the letter "T". Plaintiff contends and the lower court concluded that defendant's use of the letter "T" constituted an infringement of plaintiff's trademark "Taylor." With this contention we do not agree. Certainly the mere fact that the letter "T" stands for "Taylor" does not justify such a conclusion. Especially is this true in view of the undisputed proof that defendant used such letter for the purpose of indicating that its chart bearing such initial was designed for use on plaintiff's machine. In other words, the use of the letter was to show destination rather than origin of the chart. We think the authorities are rather clear to the effect that the use of such letter, under the circumstances of this case, was neither trademark use nor trademark infringement. Columbia Mill Co. v. Alcorn, 150 U.S. 460, 463, 14 S.Ct. 151, 37 L.Ed. 1144; Elgin National Watch Co. v. Illinois Watch Case Co., 179 U.S. 665, 673, 21 S.Ct. 270, 45 L.Ed. 365; American Dirigold Corp. v. Dirigold Metals Corp., 6 Cir., 125 F. 2d 446, 453; Autoline Oil Co., et al. v. Indian Refining Co., Inc., D.C., 3 F.2d 457. In the latter case, plaintiff charged that its registered trademark "F Autoline" was infringed by defendant's use upon its product of "F Havoline." In denying plaintiff's contention, it was held that the letter "F" was used by both parties to indicate that the oil produced by each was suitable for use in Ford cars. It will be noted that the letter "F" was a part of plaintiff's registered trademark, in contrast to the instant situation wherein the letter "T" in and of itself is no part of plaintiff's registered trademark.

As bearing upon the matter of trademark infringement, plaintiff also relies upon defendant's use of "Tay" and "Taylor" in the sale of its charts, neither of which, as already pointed out, was used by defendant upon the chart itself. The use by defendant of the symbol "Tay" was in connection with a price card advertising charts for sale. As already stated, defendant manufactures charts for use on record-

ing machines manufactured by a number of concerns other than plaintiff. The price card complained of, under the designation in bold type "Chart to fit," listed charts for numerous machines, including those of the plaintiff. At the bottom of the card was printed in large letters defendant's name and address.

■ Plaintiff in its brief concedes that "defendant has the right to sell charts to the owners of these 'Taylor' instruments, but this does not give the defendant the right to copy plaintiff's copyrighted charts, or to use plaintiff's trademark 'Taylor' or the abbreviations of it * * *." Plaintiff could not do otherwise than make such concession, and it appears that defendant, by its advertising just referred to, was acting within its rights in advising the public that it had for sale charts to fit plaintiff's machine. Defendant, having the conceded right to manufacture and sell a chart designed to fit plaintiff's machine, certainly was entitled to advise the public that it had for sale a "Chart to fit" such machine, and the fact that it so advertised furnishes no support to the conclusion that it was infringing plaintiff's trademark "Taylor."

■ The sole instance wherein defendant was shown to have used the word "Taylor" was in a confidential letter to the Bowman Dairy Company, in which the defendant quoted a price on "Taylor" charts, as well as on numerous other designated charts. This letter was obtained in some manner by plaintiff without the consent of either the defendant or the Bowman Dairy Company, and was exhibited to certain of plaintiff's witnesses who furnished some testimony to the effect that the word "Taylor" would indicate that the charts were those of the plaintiff. We are of the view that testimony obtained in such fashion is entitled to little, if any, weight. Certainly the recipient of the letter was not deceived or misled in any particular. The purchasing agent of the Bowman Company testified positively that his company understood, in fact was so advised by the defendant, that the charts mentioned in the letter were manufactured by it. We think that this isolated instance of defendant's use of the word "Taylor" in a private communication thoroughly understood by the recipient is without significance.

■ What we have said concerning plaintiff's charges of copyright and trademark infringement is largely determinative of its charge of unfair competition. We shall mention one additional circumstance relied upon by plaintiff. It has to do with the sale by defendant of thirty boxes of charts manufactured by it, which plaintiff contends were sold as those of the plaintiff. These charts were sold in response to letters which requested, "Kindly forward me by return mail one box of Taylor charts No. 742." The persons placing such orders were in each instance in the employ of the plaintiff, and the orders were evidently placed with the view of obtaining evidence preparatory to this litigation. Plaintiff contends that such an order calls for a box of charts manufactured by it. Defendant argues that it interpreted the order as calling for a box of charts designed for plaintiff's machine. Acting upon such interpretation, the order was filled by defendant's charts, manufactured to fit plaintiff's machine. The letter, in our judgment, is capable of either construction. Certainly the interpretation placed upon it by the defendant is as reasonable, if not more so, than that placed upon it by the plaintiff. Plaintiff, in its anxiety to obtain evidence, apparently thus worded the letter as a basis for the contention now made. If defendant had supplied charts in response to orders for those manufactured by the plaintiff, an entirely different situation would be presented. While it may be, as argued by the plaintiff, that the employment of persons to make purchases is the only way of obtaining evidence to support its charge, it does not follow that such persons are licensed to practice a deception on the party against whom the evidence is sought to be obtained.

Furthermore, the accusation that defendant palmed off these thirty boxes of charts as those of the plaintiff comes near to being dispelled by other circumstances of their sale and delivery. Such shipments were billed by the defendant to be paid for within sixty days after receipt, thus giving the purchaser ample time to examine the charts. In addition, the defendant, in conformity with its universal custom, packed and shipped the charts in a one piece white box having a hinge opening and red printing, with its name conspicuously printed on top of the box. In contrast to this, plaintiff's charts were uni-

versally packed and sold in a two piece box having a dark blue cover, with the trademark "Taylor," two inches in height, printed in light blue thereon. It is difficult to believe that the persons who ordered these thirty boxes of charts, or any other persons acting under like circumstances, could have been deceived or misled. Cf. Quaker Oats Co. v. General Mills, Inc., 7 Cir., 134 F.2d 429.

In conclusion, we have not overlooked the testimony of some witnesses introduced by the plaintiff to the general effect that defendant's manner of doing business either had or was calculated to confuse the purchasing public. Of course, little is required to confuse a person who is desirous of being confused for the purpose of a law suit. Much of plaintiff's evidence may properly be placed in this category. Others of plaintiff's witnesses were confused, or at any rate pretended to be, as a direct result either of their refusal or neglect to read what was plainly before them. Typical of such witnesses are those who pretended to believe that the symbol "Tay" used on defendant's advertising cards, heretofore referred to, indicated that the product advertised was that of the plaintiff, notwithstanding that such symbol followed the designation in bold type "Chart to fit," and that defendant's name and address were printed in large letters in connection therewith.

It follows that the judgment appealed from must be and is hereby reversed and remanded, with directions to dismiss plaintiff's complaint. This is without prejudice to the right of the court to allow to defendant its costs of suit, including as part thereof a reasonable attorney fee, as provided by Sec. 40, Title 17 U.S.C.A.