**WARNER AND SWASEY COMPANY,**
**Plaintiff,**

v.

**Edwin HELD, Jr., as Executor of the Estate of Edwin Held, Sr., Deceased, and Edwin Held, Jr., d/b/a Enco Tool Works, a partnership, Defendants.**

**WARNER AND SWASEY COMPANY,**
**Plaintiff,**

v.

**CUTTING TOOLS, INC., Thomas A. Mowry, Ethel Mowry (Mrs. Thomas A.) and Dan Samuel, Defendants.**

**Nos. 62-C-230, 62-C-231.**

United States District Court
E. D. Wisconsin.

July 20, 1966.

Eugene R. Sawall, Milwaukee, Wis., for plaintiff. J. William Freeman, Akron, Ohio, of counsel.

Joseph P. House, Jr., Milwaukee, Wis., for defendants.

## OPINION AND ORDER

REYNOLDS, District Judge.

These cases are suits for the infringement of the claims of several patents and have been consolidated for the purposes of trial.

Plaintiff produces a cutoff tool and holder with a removable cutting insert bit. Plaintiff has a patent, No. 2,846,756, upon the entire combination and a separate patent, No. 2,964,833, upon the removable insert bit.

Plaintiff alleges that defendants in both cases have (1) directly infringed Patent No. 2,964,833 by making and selling insert bits of the type covered by the claims of such patent; (2) directly infringed Patent Nos. 2,964,833 and No. 2,846,756 by actively inducing others to infringe said patents; and (3) contributorily infringed Patent No. 2,846,756. Defendants have answered and counterclaimed.

Attached to and made a part of this opinion are sketches of the plaintiff's insert bit (Sketch I) and defendants' accused insert bit (Sketch II).

**TOOL BIT OF PLAINTIFF'S PATENT AND PLAINTIFF'S SKETCH I**

**DEFENDANTS' ACCUSED TOOL BIT AND PLAINTIFF'S SKETCH II**

Both parties have moved for summary judgment. The defendants have moved to dismiss the complaints as to alleged infringement of both patents by production of Sketch II inserts. The plaintiff has moved for judgment, finding that defendants' sale of both types of inserts (Sketches I and II) amounts to infringement of plaintiff's combination Patent No. 2,846,756. In addition, the plaintiff has moved to (1) strike under Rule 12(f) of the Federal Rules of Civil Procedure certain paragraphs from defendants' answer to plaintiff's supplemental complaint and counterclaim, and (2) to strike defendants' demand for a jury trial "on all issues."

### I.

### DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

Defendants have moved the court for summary judgment dismissing the complaints upon the following grounds:

1. Plaintiff is estopped to apply the claims of Patent No. 2,964,833 to defendants' removable inserts.

2. As construed by plaintiff, Patent No. 2,964,833 is anticipated and therefore rendered invalid by the prior patents to Anthony, Nos. 2,416,975 and 2,453,959.

3. Defendants cannot be contributory infringers or active inducers of direct infringement of Patent No. 2,846,756 because of the absence of direct infringement.

■■ Summary judgment, when appropriate, is a useful device for avoiding the time and expense of a trial. It is a drastic remedy since it deprives a party of his day in court. Thus summary judgment under Rule 56(c) will be denied if the Court is aware of a genuine issue of material fact existing between the parties. Yardley Created Products Co. v. Clopay Corporation, 324 F.2d 932, 933 (7th Cir. 1963). It has been said that the instances in which summary judgment will be available is limited in patent litigation because of the numerous fact issues arising therein. Inglett & Company v. Everglades Fertilizer Company, 255 F.2d 342, 349 (5th Cir. 1958).

■ Ground 1 of defendants' motion for summary judgment is based upon the doctrine of file wrapper estoppel. This means that a patentee who has been compelled or induced to alter or limit his claims during their prosecution in the Patent Office is forever bound by said alteration or limitations upon his claims. Such patentee may not thereafter " * * * * recapture what he has disclaimed or assert the claim against any equivalents that would respond to the claim in its earlier form but which do not respond expressly to the claim as issued." Dixie Cup Co. v. Paper Container Mfg. Co., 169 F.2d 645, 648 (7th Cir. 1948).

Defendants point to the following indications of claim limitations in the file wrapper (Paper No. 11 in the file wrapper—brief on appeal):

"*Anthony Patent 2,416,975*

"To this end the Court will note that the following limitations of the appealed claims are submitted to be absent from the teachings of the primary reference to Anthony.

"1. Anthony does not show an insert unit that shows the opposed top and bottom surfaces of the shank and tip being coplanar.

"2. Anthony does not show a cutting tip that projects longitudinally from the end of the shank so as to constitute an extension of the shank.

"3. Anthony does not show a shank whose end surface is brazed to a cutting tip that projects longitudinally therefrom."

In Paper No. 16 of the file wrapper—reply brief, the patentee said:

" * * * The tests proved beyond any question that each and every limitation of Applicant's claims was required to produce a bit that operated satisfactorily on a production basis."

Defendants contend that their allegedly infringing Sketch II insert, like the insert unit in the prior art patent of Anthony, lacks all of the above three

characteristics. Therefore, defendants urge that plaintiff is estopped from attempting to recapture what it has before the Patent Office disclaimed by asserting infringement by the Sketch II insert of plaintiff's Patent No. 2,964,833.

Assuming but not deciding that the file wrapper does in fact indicate that the plaintiff has made the aforementioned three limitations upon its claims before the Patent Office so as to estop it now from asserting a broader interpretation of its claims, and also that defendants' accused insert does not possess any of the three aforementioned characteristics, can it be held that no genuine issue of material fact exists between the parties? In this case, the answer is no.

■ Plaintiff alleges that the doctrine of equivalents is applicable. The essence of this doctrine is that one may not practice a fraud upon a patent. A patentee may protect his patented invention against one who by a new device performs substantially the same function in substantially the same way to obtain the same result. Graver Tank & Mfg. Co. v. Linde Air Products Co., 339 U.S. 605, 608, 70 S.Ct. 854, 94 L.Ed. 1097 (1950).

■ A patentee may not successfully assert the principle of equivalents to relieve himself from the effects of a file wrapper estoppel since by doing so he would recapture what he has disclaimed before the Patent Office. In this sense the principle of file wrapper estoppel takes precedence over the principle of equivalents.

■ While a patentee may not assert the principle of equivalents to obtain relief from the effects of a file wrapper estoppel, he is always free to assert that defendants' accused product is the equivalent of his patented invention, as that invention is limited by each and every amendment made by him in the prosecution of his patent. In this sense the principle of file wrapper estoppel and the principle of equivalents exist and are to be applied side by side.

■ We conclude that a material controverted question of fact exists in this case even if the Court assumes that plaintiff's claims are limited in the manner urged by the defendants because of amendments made in an effort to secure issuance of its patent. The Court in Rohm & Haas Company v. Permutit Company, 130 F.Supp. 260, 263 (D.Del.1954), states with precision the fact issue involved here:

" * * * If the * * * [Sketch II insert] of the defendant might have been covered by the original claims of the plaintiff, but which said claims were given up by the amendments in the Patent Office and such * * * [Sketch II insert] is only covered by the terms of the patent as issued when read in the light of the claims given up by amendment, then a given situation exists. If, on the other hand, the * * * [Sketch II insert] of the defendant is covered by the terms of the patent as granted, either expressly or by application of the doctrine of equivalents and no recourse is necessary to that which was given up by amendment, and when read in the light of those amendments, then a different situation exists."

At the trial, both parties can present evidence that the situation favorable to it exists.[1]

The second ground upon which defendants base their prayer for summary judgment is that, as construed by the plaintiff, Patent No. 2,964,833 upon the insert is invalid. Defendants allege that plaintiff must construe its claims in a very broad sense in order to make them apply to the accused Sketch II insert, and in the

---

1. The Court means only to suggest one controverted fact question that would exist even if the file wrapper in fact supports defendants' contended limitations of plaintiff's claims. There may well be numerous other fact issues. The parties, for example, may wish to dispute the technical meaning of terms used in the relevant amendments to plaintiff's claims. Inglett & Company v. Everglades Fertilizer Company, 255 F.2d 342, 347–348 (5th Cir. 1958).

course of this construction the claims are expanded to the point where they read also on the prior art (Anthony Patent Nos. 2,416,975 and 2,453,959), so that Patent No. 2,964,833 is invalid as construed because, as construed, it is anticipated by the prior art.

Plaintiff, on the other hand, would appear to allege that the construction it makes of its claims is not so broad as to anticipate prior art but rather that defendants' accused Sketch II insert is the equivalent of its patented insert and infringes the claims of its patent when such claims are construed so as to be distinguished from the prior art. In other words, plaintiff asserts that defendants' Sketch II insert follows plaintiff's teachings and not the teachings of Anthony— that defendants' insert is a twin or model of the plaintiff's rather than Anthony's.

■ It becomes readily apparent, therefore, that a genuine issue of material controverted fact exists between the parties upon this point. If the plaintiff, in order to maintain that the claims of its patent are infringed by production of the defendants' accused Sketch II insert, must construe those claims so broadly as to anticipate prior art, then one factual situation exists. If on the other hand defendants' accused Sketch II insert is the equivalent of plaintiff's insert, when the claims of plaintiff's patent are construed so as to be distinguished from the prior art, then another factual situation exists.[2] Plaintiff is entitled to its day in court to show that the factual situation it alleges exists.

Ground 3 of defendants' motion for summary judgment is directed to plaintiff's combination Patent No. 2,846,756. Defendants allege that they cannot be contributory infringers or active inducers of direct infringement of Patent No. 2,846,756 because of the absence of direct infringement.

Defendants assert that the inserts involved in this case have a period of life ranging from only a few hours to as long as fifty or sixty hours of use, depending on the service to which they are subjected. Since the inserts are of a perishable nature, a person who purchases the patented combination, cutoff tool and holder, defendants urge, has a license to replace them from any source without infringement. Therefore, since their customers would not be direct infringers, defendants contend, they cannot be contributory infringers or active inducers of direct infringement.

■ It is settled that if there is no direct infringement of the claims of a patent, there can be no contributory infringement and obviously no active inducement of direct infringement. The purchaser of a patented combination receives a license from the patentee to replace temporary unpatented parts of a patented combination from any source available to him. The right of the purchaser to replace such parts arises not because they are perishable per se but because the patentee has so arranged them as part of its combination that the combination could not be continued in use without a succession of such parts

2. Plaintiff alleges that defendants admit (plaintiff's interrogatory No. 74t) that their inserts dimensionally duplicate plaintiff's patented insert. Plaintiff upon trial may wish to introduce factual evidence to the effect that such dimensional duplication plays a part in making the defendants' Sketch II insert the equivalent of plaintiff's Sketch I insert.

Plaintiff points to an alleged factual distinction between its patented insert and the prior art inserts of Anthony (plaintiff's memorandum opposing defendants' motion for summary judgment, p. 10). Plaintiff asserts that the claims of its

patent recite the following key limitation: " * * * the elongate length of said bit being a substantial multiple of the distance between said top surfaces and said bottom surfaces." Presumably, plaintiff will endeavor to show at trial that defendants' Sketch II insert has the aforementioned characteristic.

"The state of the prior art and its uses and the nature of the improvement over the prior art present factual questions." Bissell Inc. v. E. R. Wagner Manufacturing Company, 204 F.Supp. 801, 808 (E. D.Wis.1962).

at short intervals. The patentee, therefore, must have contemplated when he sold the combination that unless he extended to the purchaser a license to replace such parts from any available source, such combination would be of little use to the purchaser. Aro Mfg. Co. v. Convertible Top Replacement Co., 365 U.S. 336, 81 S.Ct. 599, 5 L.Ed.2d 592 (1961); Wilson v. Simpson, 9 How. 109, 13 L.Ed. 66 (1850).

■ There is a limitation upon the aforementioned right of replacement. The part replaced must be an unpatented part of the combination. To supply patented parts of a patented combination without authority from the patentee to purchasers of the combination is a direct infringement of the claims of the patent on the part and a contributory infringement of the claims of the patent on the combination, assuming that the requirements of 35 U.S.C. § 271(c) are otherwise met.[3] National Malleable Casting Co. v. American Steel Foundries, 182 F. 626, 640–641 (C.C.D.N.J.1910); Singer Mfg. Co. v. Springfield Foundry Co., 34 F. 393 (C.C.D.Mass.1888). The very fact that the patentee of a patented combination bothers to secure a patent upon a component part of that combination negates any inference that in selling the combination he contemplates or intends licensing such purchaser to replace the patented part from any source other than himself.

■ If for any reason, as, for example, a file wrapper estoppel, defendants' production of the separately patented component would not be a direct infringement of the claims of the separate patent, then, of course, there would be no contributory infringement of the combination patent so long as the use of such component part by the purchaser thereof amounted to replacement rather than reconstruction of the combination.

Plaintiff in this case has a patent on the removable insert. It alleges direct infringement of the claims of such patent. Defendants admit the validity of this patent but assert they may produce the accused Sketch II inserts because of a file wrapper estoppel and because the claims of said patent as construed presently by the plaintiff are invalid.

If the defendants upon trial sustain either of the aforementioned defenses with respect to the insert Patent No. 2,964,833 (Sketch I), it is evident they would not be contributory infringers of the combination patent unless the use of the accused insert (Sketch II) should be proved a reconstruction rather than a replacement of the combination. On the other hand, if upon trial defendants are found to have directly infringed the claims of the insert Patent No. 2,964,833 (Sketch I), they would also be contributory infringers of the combination patent if the other requisites of 35 U.S.C. § 271(c) are shown to have been met.

■ Since material controverted questions of fact exist with respect to whether defendants have infringed the claims of plaintiff's insert patent, and since a decision on this point is material to whether defendants have contributorily infringed plaintiff's combination patent, defendants have not shown themselves entitled to judgment as a matter of law that they are neither contributory infringers nor active inducers of direct infringement of Patent No. 2,846,756.

## II.

### PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

■ Plaintiff has moved the court for summary judgment finding that defendants' sale of Sketch I and Sketch II inserts amounts to contributory infringement of plaintiff's combination Patent No. 2,846,756.

3. Defendants almost seem to concede this point when they state in their reply to plaintiff's memorandum opposing defendants' motion for summary judgment (p. 19): " * * * plaintiff's 'rights' are violated if the patent on the component is infringed. It then becomes somewhat a matter of indifference to the parties whether or not the combination patent is *also* infringed. * * *"

This motion is denied. Defendants have pointed out many controverted issues concerning which they intend to produce evidence upon the trial, such as:

1. Is Patent No. 2,846,756 valid over all the prior art?

2. Are individually named officers of corporate defendant, Cutting Tools, Inc., proper party defendants?

3. Are the claims of Patent No. 2,-846,756 void for double patenting over the claims of Patent No. 2,737,705?

4. The issue of file wrapper estoppel with respect to Patent No. 2,846,756.

5. The issue of unclean hands of the plaintiff because of its alleged misuse of the patents in suit and its alleged unfair competition with defendants.

6. The issue of plaintiff's bad faith in allegedly prosecuting the patents in suit with full knowledge that it has no valid cause of action against defendants.

Certainly these issues involve many material controverted factual disputes.

### III.

### PLAINTIFF'S MOTION TO STRIKE UNDER RULE 12(f)

■■■■ Rule 12(f) of the Federal Rules of Civil Procedure permits the court, in its discretion, to strike from a pleading " * * * any insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Motions to strike are not favored. Matter will not be stricken unless it is evident that it has no bearing upon the subject matter of the litigation. Kraus v. General Motors Corporation, 27 F.Supp. 537 (S.D.N.Y.1939); Bowles v. Chas. A. Krause Milling Co., 62 F.Supp. 244 (E.D. Wis.1945). If there is any doubt as to whether the pleaded matter raises or joins issues relative to the controversy in suit, the motion to strike should not be granted. Samuel Goldwyn, Inc. v. United Artists Corporation, 35 F.Supp. 633 (S.D.N.Y.1940). Plaintiff's motion must be determined in light of these general considerations.

Plaintiff is the owner of the Design Patent No. 195,485. This patent covers an insert bit for plaintiff's cutoff tool and holder. Plaintiff is also the owner of trademark rights as evidenced by U. S. Trademark 730,056 for the trademark "Manchester."

Plaintiff filed a supplemental complaint alleging that defendants (1) infringed plaintiff's design patent, (2) infringed plaintiff's trademark, and (3) unfairly competed with the plaintiff. Plaintiff prayed for treble damages because of the alleged willful and wanton nature of defendants' infringing activities. Defendants filed an answer to the supplemental complaint and a counterclaim.

Plaintiff has moved the court to strike certain paragraphs from said answer to the supplemental complaint:

1. Paragraph 6, and all subportions thereof, of defendants' answer to first supplementary cause of action.

2. Paragraph 5, and all subportions thereof, of defendants' answer to second supplementary cause of action.

3. Paragraphs 7 and 8, including all subportions thereof, of defendants' answer to third supplementary cause of action.

4. The defendants' demand for a jury trial "on all issues."

These paragraphs will be considered separately.

Paragraph 6 of defendants' answer to the first supplementary cause of action can be summarized as follows:

6. Defendants allege:

A. That—

(1) The alleged infringing tool is not now and has never been in defendants' line.

(2) The accused tool was produced innocently and without knowledge of plaintiff's patent.

(3) Defendants have sold fewer than fifty of the accused tools, such tools having a total value which does not exceed $130.00.

(4) All sales of the accused tool were terminated over a year before the first notice from the plaintiff of Design Pat-

ent No. 195,485, and defendants have indicated to plaintiff by letter that they have no intention of making any more such tools.

B. Plaintiff's design patent is invalid for failure to comply with design patent law, particularly 35 U.S.C. § 171.

C. This cause of action is without merit and is de minimis.

Plaintiff asserts that the allegations of subparagraph 6–A constitute neither avoidance nor affirmative defenses within the meaning of Rule 8(c) and therefore should be stricken under Rule 12(f). Plaintiff asserts, and the Court agrees, that the fact that an accused device is not part of a product line, that such device was produced without knowledge of plaintiff's patent, and that infringement has been discontinued constitute no defense to a charge of infringement per se.

If, however, the plaintiff charges that such infringement was willful and wanton with a view to procuring treble damages therefor, the above matters become material to the controversy before the court. They are a defense not to the infringement per se but to the willful and wantonness thereof.

It is true that the matters alleged in 6–A are not, strictly speaking, affirmative defenses, but they are defenses. Perhaps defendants have included in 6–A more than they need have. It would have been sufficient had defendants substituted for the allegations in 6–A a simple denial that their conduct was willful or wanton. Under such a denial, defendants could have introduced all the evidence at trial that they will be able to introduce under the allegations of 6–A. In its discretion, however, the Court will not strike 6–A of defendants' answer simply because defendants have chosen to amplify their pleading somewhat and give the Court and the plaintiff more information than perhaps would have been necessary. It is difficult to perceive how the plaintiff could be prejudiced by allowing the allegations of 6–A to remain.

Plaintiff concedes that 6–B is a valid affirmative defense. The Court is unable to discover any law supporting plaintiff's contention that 6–B should be stricken since it is not separately asserted.

In 6–C, defendants assert that the first supplementary cause of action is de minimis and should be dismissed. The doctrine of de minimis is a valid affirmative defense. In order to establish this defense it is necessary to show not only that the number of accused items sold is small but also that the sale was "so unusual that it will not be repeated in quantities not de minimis." J. & G. Development Company v. All-Tronics, Inc., 198 F.Supp. 392, 395 (E.D.N.Y. 1961); Systron-Donner Corp. v. Palomar Scientific Corp., 239 F.Supp. 148, 151 (N.D.Calif.1965). Defendants may or may not be able to sustain this defense upon trial. Still, they are entitled to support it by evidence at the trial.

Paragraph 5 of defendants' answer to the second supplementary cause of action can be summarized as follows:

5. Defendants allege:

A. That their inserts, although offered for sale as a "replacement" for plaintiff's tool, are stamped with the term "Enco." That they do not use the term "Manchester" either on insert bits or in any advertising with respect thereto.

B. In accordance with established shipping and billing practice, defendants' invoices usually conform to the customers' purchase orders, and if the customer used the term "Manchester" thereon, defendants conformed their invoices to the customer's purchase orders. In 99% of the cases, the customer asked for the insert bit by grade number and sometimes stated that the bit was for a "Manchester" tool holder. In rare cases (less than 1%) the customer referred to the bit as a "Manchester" insert. These rare cases are the only times defendants have used the term "Manchester" on their invoices. Defendants' customers are

fully aware that they are purchasing defendants' inserts and not plaintiff's.

C. The use of the term "Manchester" in the rare cases aforesaid is no more than fairly and truthfully using it to designate the holders in which bits are to be inserted and violates no trademark rights owned by plaintiff.

D. Promptly upon plaintiff's complaint, defendants advised it of the aforesaid facts. The rare instances of defendants' use of "Manchester" last occurred no more recently than two or three years prior to October 6, 1964.

E. This cause of action is de minimis.

In subparagraphs 5–A, B, and C, defendants, in effect, admit that on certain occasions they used the term "Manchester" but allege that this use did not amount to trademark infringement. This is the very essence of affirmative defense or avoidance.

Defendants allege that they never used the term "Manchester" on their inserts or in their advertising. Certainly this allegation is proper. Defendants allege that on rare occasions they used the term "Manchester" on invoices, but that their customers, who fully understood that they were ordering defendants' inserts and not the plaintiff's, initially used the term in their purchase orders in each instance. Defendants allege that this use of the term "Manchester" was simply to designate the holders in which their bits are to be inserted. It is apparent, therefore, that defendants allege the defense set forth by the Seventh Circuit in Taylor Instrument Companies v. Fawley-Brost Co., 139 F.2d 98 (7th Cir. 1943).

■ As defendants state in their brief (p. 5): "One could hardly sell a tire

to put on a Buick automobile without referring to the automobile as a Buick, and this infringes no trademark rights of General Motors." Whether or not defendants will be able to sustain this rather narrow defense upon trial is impossible for the Court to determine at this time. Defendants are entitled to plead it.[4]

The Court will not strike subparagraph 5–D of defendants' answer to the second supplementary cause of action for the same reasons it declines to strike subparagraph 6–A of defendants' answer to the first supplementary cause of action.

■ Subparagraph 5–E alleges the de minimis defense which the Court declines to strike for the same reasons it declines to strike subparagraph 6–C of defendants' answer to the first supplementary cause of action.

Paragraphs 7 and 8 of defendants' answer to the third supplementary cause of action read as follows:

"7. Under F.R.C.P. 12, defendants assert that:

"(a) This Court has no jurisdiction over the Third Supplementary Cause of Action nor has plaintiff pleaded any jurisdiction of this Court thereover, and this cause of action should be dismissed.

"(b) The Third Supplementary Cause of Action does not state a claim upon which relief can be granted, and this cause of action should be dismissed. * * *

"8. This Third Supplementary Cause of Action is completely without merit and is lacking in equity. On information and belief, defendants assert that this cause of action is brought by plaintiff in bad faith as a misuse and abuse of judicial process to harass

4. Subparagraph 5–B contains some evidentiary matter which should have been omitted from the answer. It is difficult, however, to perceive how plaintiff's rights have been prejudiced by its inclusion. Certainly the matter in 5–B when considered with 5–C raises issues to be determined upon trial. In its

discretion, therefore, the Court declines to strike 5–B.

Plaintiff prays that the court award treble damages because of the alleged willful and wanton conduct of the defendants. In a sense, much of the matter in 5–B can be regarded as raising an issue on this point as well as the points previously mentioned.

and bring economic pressure on defendants and to create and maintain an illegal monopoly in the business of manufacturing and selling replacement insert bits designed for use as replacement parts in plaintiff's cutting tools, wherefor this cause of action should be dismissed."

Plaintiff asserts that the allegations of paragraph 7 are too vague and indefinite to plead or otherwise respond to. Accordingly, plaintiff has moved that paragraph 7 be stricken or, in the alternative, made more definite.

 Plaintiff's objections to paragraph 7 are not well taken. A cursory reading of paragraph 7 indicates the defenses asserted. Plaintiff contends that the proper method to make a jurisdictional challenge is by a motion for dismissal under Rule 12(b) (1). This is not, however, the only method to make such a challenge. Defendants, at their option, are entitled to challenge the jurisdiction of this court in their answer as well as to assert that the complaint does not state a claim upon which relief can be granted.

Although plaintiff has moved the Court to strike paragraph 8 of defendants' answer to the third supplementary cause of action, the Court is unable to discover any specific objections plaintiff has with respect to said paragraph. The Court has, nevertheless, independently examined paragraph 8 and in its discretion decided that it should not be stricken.

Paragraph E of defendants' prayer for relief in their answer to the supplemental complaint and counterclaim reads as follows:

"E. Defendants demand a jury trial on all issues."

Plaintiff asks that paragraph E be stricken. Plaintiff interprets paragraph E as applying to all the issues before the court, not simply those issues raised by the supplemental complaint. As to all issues raised by the original complaint, plaintiff urges that a jury demand is no longer timely. Plaintiff concedes that the defendants have made a timely demand for a jury trial on the issues raised by plaintiff's supplemental complaint.

Defendants demand for a jury trial obviously extends only to the issues raised by the supplemental complaint which are triable by jury. As to those issues, defendants have made a timely jury demand and have an absolute right to a jury trial.

For the foregoing reasons,

It is ordered that defendants' motion for summary judgment be and it is hereby denied.

It is further ordered that plaintiff's motion for summary judgment be and it is hereby denied.

It is further ordered that plaintiff's motion to strike be and it is hereby denied.

It is further ordered that plaintiff's motion to make more definite and certain be and it is hereby denied.