JANUZ MARKETING COMMUNICA-
TIONS, INC., Plaintiff,

v.

DOUBLEDAY & COMPANY,
INC., Defendant.

No. 82 Civ. 0628–CLB.

United States District Court,
S.D. New York.

May 27, 1982.

Charles B. Chernofsky, New York City, for plaintiff.

Satterlee & Stephens, New York City, for defendant.

MEMORANDUM AND ORDER

BRIEANT, District Judge.

By motion docketed February 2, 1982, plaintiff seeks preliminary injunctive relief preventing defendant from further printing, publishing, distribution, licensing, or sale of a book entitled "How to Organize Your Work and Your Life". Plaintiff seeks damages and permanent injunctive relief for copyright infringement and false representation.

By motion docketed May 18, 1982, defendant seeks to dismiss the complaint for failure to state a claim.

Subject matter jurisdiction is predicated upon 28 U.S.C. § 1338(a) & (b) and 15 U.S.C. § 1121.

Plaintiff Januz Marketing Communications, Inc. ("Januz") is a Delaware Corporation with its principal place of business located in Lake Bluff, Illinois. Defendant Doubleday & Company, Inc. ("Doubleday") is a New York corporation with its principal place of business in this district.

The facts as set forth below are not disputed. Both sides have submitted briefs and affidavits which have been considered by the Court.

At issue in this case are the rights to two charts or forms ("the Charts") devised by Mr. Robert A. Moskowitz ("Moskowitz"), not a party to this action. One Chart is entitled "Time Log" and the other is entitled "To Do Today". Plaintiff claims that it owns all rights in the Charts, and that these rights are protected under the copyright laws of the United States. Defendant claims that the Charts are not protected under the copyright laws, and that even if they are protected, Mr. Moskowitz retains all rights to the Charts and gave defendant lawful permission to use the Charts.

In 1977, according to Moskowitz, he was President of the "Public Interest Media Project", a non-profit organization which conducted educational seminars throughout the United States. Mr. Moskowitz claims, and the Court assumes, that he designed, prepared and distributed the Charts in 1977

as a part of seminars he gave for the Public Interest Media Project and, when distributed, the Charts bore the following notice: "(c) 1977 by Robert Moskowitz".

As distributed in 1977, the "Time Log" chart consists of a large graph to be filled in by the user. Along the top of the page are spaces to enter the user's name and the date. The ordinate, or vertical axis, of the graph contain a listing of the hours of the working day, from 7 a.m. to 10 p.m. The abscissa, or horizontal axis, contain blank lines or spaces within which the user is to enter "Your Projects and Activities" for a particular business day. The user is then instructed: "At each [hourly] interval, place an 'X' to record what [projects and activities] you are doing". There is a blank space at the right end of each horizontal hourly line for "comments", and at the bottom of each vertical activities column space for the "column totals".

The purpose of this "Time Log" is to enable the user to determine, after several days work has been recorded, how much time each day is spent or wasted on "trivial" items compared with "important" items. Thereby the user is helped to organize and manage his or her time.

The 1977 version of the "To Do Today" chart is comprised of four sections containing various blank columns. The top of the page contains space to enter the user's name and date. The largest box, on the upper left, contains columns in which to enter the tasks for the day, their "priority", when "due", "time estimate", and "results time needed". The next largest box contains blanks in which to enter "People to See/Things to Talk About". The two remaining boxes contain space in which to list "Telephone Calls. To? Why?" and "Writing Letters/Reports". The purpose of this chart is to enable the user to plan for the most effective use of each day.

Beginning some time in 1978, MRH Associated, Inc. ("MRH") published a bi-weekly newsletter entitled, "Execu*Time—The Newsletter On Effective Use of Time" ("Execu*Time"). On June 8, 1978, Moskowitz entered into a written employment contract with MRH whereby Moskowitz was employed as the Editor of Execu*Time. The contract also provided that:

"1. Editor to provide copy for Execu*Time each month. Copy to deal with the effective use of executive time and be fresh, lively and relevant.

\* \* \* \* \* \*

4. This agreement to be in effect from May 1, 1978 to April 30, 1979.

\* \* \* \* \* \*

6. Publisher to retain copyright ownership of all editorial material appearing in the newsletter." (Ex. A to Complaint docketed Feb. 2, 1982.)

In September, 1978, MHR published and distributed to its subscribers an issue of Execu*Time, Volume 1, Number 5, which contained, among other things, "Bonus Insert # 1" and "Bonus Insert # 2". Bonus Insert # 1 was the 1977 "Time Log" chart in typeset form with very minor changes, preceded by a page of instructions. Bonus Insert # 2 was the "To Do Today" chart in typeset form with minor changes in the column headings and the addition of one new section entitled "Long Range (task, when due)" preceded by a page of instructions. From time to time, MRH reprinted these charts. Each time they were so published they contained the notation, "Copyright MRH Associated, 1978. All rights reserved".

On January 9, 1980, plaintiff purchased from MRH all "right, title and interest in and to the newsletter publication titled 'Execu-Time' . . . including but not limited to the names, copyrights, trademark rights, tradename rights . . . editorial materials. . . ." Complaint at ¶ 9.

In September, 1981, defendant Doubleday published approximately 15,000 copies of a paperback book written and copyrighted by Mr. Moskowitz, entitled "How to Organize Your Work and Your Life" (the "Moskowitz/Doubleday Book"). Appendices A and B of the Moskowitz/Doubleday Book respectively, contain the "Time Log" and "To Do Today" Charts exactly as they appeared

in Execu*Time. However, the charts are prefaced by a new set of instructions.

Subsequent to the release of the Moskowitz/Doubleday Book, Charles Scribner's Sons published "Time Management for Executives—A Handbook from the Editors of Execu*Time" (the Januz/Scribner's Book"). This book was written and copyrighted by Lauren R. Januz, the President of the plaintiff, and Susan K. Jones. The Januz/Scribner's Book contains both the "Time Log" and "To Do Today" Charts along with modified versions of the instructions which appeared in Execu*Time. Both of the Charts contain the legend, "Copyright (c) 1978, 1981 Januz Marketing Communications, Inc." (The Charts, as they appeared in the Januz/Moskowitz Book, are reproduced in Appendices A and B to this opinion.) The back of the title page of the book notes that, "some of the material in this book appeared previously in the *Execu-Time* Newsletter and is used with the permission of the copyright holder, Januz Marketing Communications, Inc. . . . ."

Based upon this chain of events, Januz claims that Moskowitz' rights to the charts were transferred to MRH under Moskowitz' employment contract, and Januz obtained all of these rights when it purchased Execu*Time from MRH. Doubleday conveniently ignores Moskowitz' employment contract, and claims that because Moskowitz had previously distributed the Charts he retains all rights in the Charts.

In light of my determination, below, that the Charts are not subject to copyright, the Court need not reach the complex factual issues presented by this chain of events, nor need it consider the effect of Moskowitz' employment contract, and his noticeable absence from the list of parties to this lawsuit.

The regulations promulgated by the Register of Copyrights provide, in relevant part, that:

"The following are examples of works not subject to copyright and applications for registration of such works cannot be entertained:

*   *   *   *   *   *

(c) Blank forms, such as time cards, graph paper, account books, diaries, blank checks, scorecards, address books, report forms, order forms and the like, which are designed for recording information and do not in themselves convey information . . ." (37 C.F.R. § 202.1)

This regulation embodies the well established rule of *Baker v. Selden,* 101 U.S. 99, 25 L.Ed. 841 (1879), "that forms usable only for the recording of information are not copyrightable." *Harcourt, Brace & World, Inc. v. Graphic Controls, Corp.,* 329 F.Supp. 517, 524 (S.D.N.Y.1971).

In *Baker v. Selden,* 101 U.S. 99, 25 L.Ed. 841 (1879), it appeared that Selden devised an improved system for bookkeeping which he explained in a book duly copyrighted. Selden's book included blank forms, with ruled lines, columns and headings, designed for use in conjunction with his system. Baker having had access to Selden's work, also wrote a book which utilized a similar plan, obtained similar results and also included forms, however, Baker's forms contained a different arrangement of columns and slightly different headings. In a decision which drew a clear distinction between patent and copyright protection, the Court held that there was no copyright infringement by Baker. The Court stated that:

The evidence of the complainant [Selden] is principally directed to the object of showing that Baker uses the same system as that which is explained and illustrated in Selden's books. It becomes important, therefore, to determine whether, in obtaining the copyright of his books, he [Selden] has secured the exclusive right to the use of the system or method of book-keeping which the said books [by Selden] are intended to illustrate and explain.

*   *   *   *   *   *

*To give to the author of the book an exclusive property in the art* [the charts or forms] *described therein, when no examination of its novelty has ever been officially made, would be a surprise and a fraud upon the public. That is the province of letters-patent, not of copyright.*

The claim to an invention or discovery of an art or manufacture must be subjected to the examination of the Patent Office before an exclusive right therein can be obtained; and it can only be secured by a patent from the government.

\*    \*    \*    \*    \*    \*

Now, whilst no one [else] has a right to print or publish his [Selden's] book, or any material part thereof, as a book intended to convey instruction in the art, any person may practice and use the art, itself which he has described and illustrated therein. The use of the art is a totally different thing from a publication of the book explaining it. The copyright of a book on book-keeping cannot secure the exclusive right to make, sell and use account-books prepared upon the plan set forth in the book. Whether the art might or might not have been patented, is a question which is not before us. It was not patented, and is open and free to the use of the public. And, of course, in using the art, the ruled lines and headings of accounts must necessarily be used as incident to it.

\*    \*    \*    \*    \*    \*

The conclusion to which we have come is, that blank account-books are not the subject of copyright; and that the *mere copyright of Selden's book did not confer upon him the exclusive right to make and use account-books, ruled and arranged as designated by him and described and illustrated in said book.* (101 U.S. at 101, 102, 104 and 107, emphasis added.)

■ Although blank forms or charts are, generally, not copyrightable under *Baker v. Selden,* there is an exception to this rule. If the blank forms or charts contain "language explanatory of" and "inseparably included" in the copyrighted textual material, then the forms or charts are protected because they convey information. *Continental Casualty Co. v. Beardsley,* 253 F.2d 702, 704 (2d Cir.1958); *Harcourt, Brace & World, Inc. v. Graphic Controls Corp.,* 329 F.Supp. 517, 524 (S.D.N.Y.1971).

In *Continental Casualty,* the Court of Appeals found that blank forms for a blanket bond which would operate *in futuro* to cover replacement of lost securities could be copyrighted because the forms, even prior to being filled out, conveyed information. The Court stated that, "inseparable included in Beardsley's bonds and affidavits, which constitute the means for the practice of his Plan, is language explanatory of the Plan. Consequently, the holding of *Baker v. Selden* is not applicable here". 253 F.2d at 704.

In *Harcourt, Brace,* the Court found that blank test answer sheets for use in conjunction with computerized optical scanners were protected by copyright. The Court said, "it is evident that the answer sheet is not merely a form upon which information is recorded (as, for example, in the case of the form on which a machine automatically records temperature...). The answer sheets here contain a mix of inherent meaning, of information conveyed, and the utility for the recording of responses." 329 F.Supp. at 524.

In several other cases, copyright protection has been upheld for blank charts and forms which conveyed information or were an inseparable part of a copyrighted text. In *Edwin K. Williams & Co., Inc. v. Edwin K. Williams & Co.—East,* 542 F.2d 1053, 1060–61, (9th Cir.1976), portions of a set of recordkeeping books and forms for service station dealers were found to instruct the user in the proper manner in which to use the forms contained in the book and were therefore held to convey information and be protected under the copyright laws.

In *Norton Printing Co. v. Augustana Hospital,* 155 U.S.P.Q. 133, 134–5 (N.D.Ill. 1976), copyright protection was sought for a series of forms for recording medical laboratory tests. The Court found that in addition to recording information "the format and arrangement used, together with the different boxes and terms, can also serve to convey information as to the type of tests to be conducted and the information which is deemed important".

In *Deutsch v. Arnold,* 98 F.2d 686, 687–88 (2d Cir.1938), the plaintiffs were granted copyright protection for a chart used for analyzing handwriting. The chart contained a system for distinguishing various elements of handwriting and descriptive information as to the character of the person whose handwriting is being analyzed. The Second Circuit determined that this system was entitled to copyright protection because it conveyed information. See Annotation: Copyright, Under Federal Copyright Laws, of Forms or Form Books, 8 A.L.R.Fed. 869, 872–73, 876–77, 880–84 (1971).

Where, however, the blank forms or charts do not fit within the limited, "information conveyed" exception to the rule of *Baker v. Selden,* the validity of the copyright is routinely denied. In *M.M. Business Forms Corp. v. Uarco, Inc.,* 472 F.2d 1137 (6th Cir.1973), at issue were blank forms or charts designed for use by television repairmen. The forms were divided into separate areas in which the repairman could enter the nature of the repairs requested, what repairs were actually performed, the parts installed and their cost, the deferred payment charge, sales tax, subtotal, deposit, balance and any special instructions. Below the form was a sheet of carbon paper followed by a duplicate of the form. There were also two detachable cardboard side flaps. One of these served as a customer receipt and the other was attached as identification to the equipment to be repaired.

The Court stated that:

"Generally, forms, including blank forms, which are intended to be used for recording facts are not the proper subjects of copyright. See, 37 C.R.F. § 202.-1(c) and (d). Thus, based on this regulation, the arrangement of vertical and horizontal lines on a business form is not copyrightable and appellee's reproduction of a form similar to appellant's form could not be the basis for an infringement action." (472 F.2d at 1139.)

In *Taylor Instrument Companies v. Fawley-Brost Co.,* 139 F.2d 98 (7th Cir.1943), the plaintiff sought copyright protection for a circular chart or graph used in conjunction with its temperature recording machine. The Court said:

"None of [the cases], so far as we are able to ascertain, has sustained a copyright upon an object which did not teach or convey information.

This brings us to a consideration of whether plaintiff's copyrighted chart is an object of explanation or an object of use. If the former, it is subject to copyright protection; if the latter, it is not entitled to such protection, but the same must be obtained, if at all, by letters-patent.

\* \* \* \* \* \*

Notwithstanding plaintiff's rather feeble argument to the contrary, the chart neither teaches nor explains the use of the art." (139 F.2d at 100.)

Copyright protection for plaintiff's chart was denied.

Similarly, in *Brown Instrument Co. v. Warner,* 161 F.2d 910 (D.C.Cir.1947), the Court denied copyright protection to a graph upon which temperature and atmospheric pressure information was recorded by a machine. The Court noted that:

"It is perhaps possible for one skilled in the art to deduce with more or less accuracy the data or specifications upon which the charts are based, but the real information that is to be given is that which would be given by curves made by the stylus of plaintiff's recording instruments when put in operation by the purchaser of such instruments." (161 F.2d at 910 quoting unpublished opinion of district court.)

The Court concluded that plaintiff's charts were not protected by the copyright laws.

Recently, in *John H. Harland Co. v. Clarke Checks, Inc.,* 207 U.S.P.Q. 664 (N.D. Ga.1980), the Court granted defendant partial summary judgment on the issues of copyright infringement and unfair competition. At issue was a line of desk checkbooks which contained "memory stubs", identical to the permanent checkbook stub placed between the permanent stub and the check. Individual checks along with the

"memory stub" could then be removed and carried about without the need of carrying the entire checkbook. Once the check was used the "memory stub" would be retained until the entry was transferred to the permanent stub. In denying plaintiff's claim for relief, the Court said:

> The plaintiff's MEMORY STUB check does not convey any additional information other than that which is contained in an ordinary bank check, which neither party contends is copyrightable... It is apparent that the plaintiff is attempting to assert copyright protection for the concept of the removable stub itself.... (207 U.S.P.Q. at 667.)

■ Plaintiff here asserts that the Charts at issue in this case are explanatory of an underlying system for time management which is contained in the text of the Januz/Scribner book. *E.g.,* Plaintiff's Memorandum of Law in Opposition, docketed March 1, 1982 at 7. The Charts at issue in this case, the "Time Log" and the "To Do Today" Charts, are distinct and separable from the textual materials contained in either the Januz/Scribner or Moskowitz/Doubleday books. The Charts, in and of themselves, do not convey any information, either by adding to or clarifying the system as explained in the text. Rather, these Charts merely provide a suggested format for recording the information discussed in the copyrighted text of each book.

I find that the Charts devised by Mr. Moskowitz and published in both the Januz/Scribner and Moskowitz/Doubleday books are not protected under the copyright laws. Plaintiff's motion for a preliminary injunction is denied, and defendant's motion to dismiss the action is granted.

The Clerk shall enter final judgment that all relief shall be denied.

So ordered.

# TIME LOG

NAME _____     DATE _____

PROJECTS & ACTIVITIES

HOURS

COMMENTS

| AM | | | | | | | | | | |
| 7 | | | | | | | | | | |
| 8 | | | | | | | | | | |
| 9 | | | | | | | | | | |
| 10 | | | | | | | | | | |
| 11 | | | | | | | | | | |
| NOON | | | | | | | | | | |
| 1 | | | | | | | | | | |
| 2 | | | | | | | | | | |
| 3 | | | | | | | | | | |
| 4 | | | | | | | | | | |
| 5 | | | | | | | | | | |
| 6 | | | | | | | | | | |
| 7 | | | | | | | | | | |
| 8 | | | | | | | | | | |
| 9 | | | | | | | | | | |
| 10 | | | | | | | | | | |
| TIME SUMMARY | | | | | | | | | | |

Instructions   Each 5, 10, or 15 minute interval (by the clock) place a ✓ in the column that best describes your activity

Copyright © 1978, 1981 Janus Marketing Communications, Inc.

APPENDIX B

# TO DO TODAY

NAME _____ DATE _____

| PRIORITY | CLIENT/TASK/JOBS | TYPE | DEADLINE | ESTIMATED TIME | COPY | ART | BILLING | ✓ | PHONE CALLS (name purpose) |
|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | |
| | | | | | | | | | |
| | | | | | | | | | |
| | | | | | | | | | |
| | | | | | | | | | |
| | | | | | | | | | |
| | | | | | | | | | |
| | | | | | | | | | |
| | | | | | | | | | |
| | | | | | | | | | |
| | | | | | | | | | |
| | | | | | | | | | |
| | | | | | | | | | LETTERS REPORTS TO WRITE |
| | | | | | | | | | |
| | | | | | | | | | |

| PEOPLE TO SEE/DISCUSSION TOPICS | ACTIVE PROSPECTS | Follow-Up | |
|---|---|---|---|
| | | | |
| | | | |
| | | | |
| | | | |
| | | | LONG RANGE (task when due) |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |

Published by JANUZ MARKETING COMMUNICATIONS INC

*Copyright © 1978, 1981 Januz Marketing Communications, Inc.*