**KONINKLIJKE PHILIPS ELECTRONICS N.V., et al., Plaintiffs,**

v.

**CINRAM INTERNATIONAL INC., et al., The ADS Group, et al., Entertainment Distribution Company (USA) LLC, et al., Optical Experts, et al., EMI Group PLC, et al.**

Nos. 08 Civ 00515 (RGS), 08 Civ 04068 (RGS), 08 Civ 04070 (RGS), 08 Civ 04071 (RGS), 08 Civ 07351 (RGS).

United States District Court,
S.D. New York.

March 26, 2009.

Ali I. Ahmed, Finnegan, Henderson, Farabow, Garrett & Dunner LLP, Washington, DC, Christopher James Houpt, Mayer Brown LLP, New York, NY, Edward David Johnson, Mayer Brown, LLP, Palo Alto, CA, John F. Hornick, Samuel C. Bass, Vince P. Kovalick, Finnegan Henderson Farabow Garrett & Dunner LLP, Washington, DC, for Plaintiffs.

Christopher Cooper Dunham, Gregory Joseph Carbo, Ivan S. Kavrukov, Tonia A. Sayour, William Edward Pelton, Cooper & Dunham LLP, New York, NY, for Defendants.

## ORDER

RICHARD G. STEARNS, District Judge.[1]

This action for breach of contract and patent infringement against Cinram International Inc., Cinram Inc., and Cinram Manufacturing Inc. (collectively Cinram), arises out of a License Agreement and a Side Letter (the Agreement) between Cinram and plaintiff Koninklijke Philips Electronics N.V. (Koninklijke). The Agreement pertains to patents in a Sony/Philips patent pool asserting ownership rights over the manufacture of CD–Audio Discs, CD–ROM Discs, and other CD formats (CDs). Included in the pool is the patent at issue in this case, U.S. patent 5,068,846 (the '846 Patent).[2] Koninklijke and U.S.

---

1. Of the District of Massachusetts, sitting by designation.

2. Plaintiffs filed four related cases in the Southern District of New York. One case, 08–cv–7351 pertains to Cinram's customers and alleges only patent infringement. It is not

Philips Corporation (plaintiffs) move for summary judgment on the breach of contract claim, arguing that Cinram materially breached the Agreement by unilaterally ceasing to pay royalties and refusing to provide plaintiffs with royalty reports. Plaintiffs seek damages in the form of delinquent royalties and interest.

Plaintiffs contend that because the parties agreed that an independent expert would determine which patents were "essential" to the manufacture of CDs, the terms of the Agreement are dispositive as to Cinram's royalty obligations. Cinram counters that it only agreed to pay royalties on CDs manufactured under plaintiffs' licensed patents. Cinram contends that in 2005, it changed its manufacturing process to invent around the '846 Patent, and therefore, it is no longer required to pay royalties. The parties primarily disagree over whether "essentiality" and "infringement" are synonymous terms under the Agreement. If they are, plaintiffs' argument that the independent expert's determination is conclusive on the issue of infringement entitles them to summary judgment.

A hearing on the motion was held in the Southern District of New York on February 19, 2009.

### BACKGROUND

Section 1.23 of the Agreement (as amended by the Side Letter) defines "Licensed Patents" as "any one or more of the essential patents for the manufacture and/or sale of the various types of CD–Discs." These are identified in the Annexes to the Agreement. Licensees are permitted to manufacture and sell "Licensed Products" within a certain Territory or Territories. Licensed Products are CDs that comply with the CD "Standard Specifications" defined in the Agreement.[3] A patent is "essential" if its use is "necessary (either directly or as a practical matter) for compliance with the Standard Specification . . . ." The Agreement further required Philips to hire an "independent patent expert" to review the patents listed in the Annexes to the Agreement to confirm their "essentiality." The independent expert designated by Philips found the '846 Patent to be "technically essential" to the production of the CDs, meaning that at least one of its claims "covers (i.e. is essential to implement) a portion of the CD–DA or CD–ROM Standards as documented."[4]

The '846 Patent expired on November 28, 2008. As of 2005, it was the only unexpired patent in the patent pool. Also in 2005, Cinram Inc., and Cinram Manufacturing Inc., among other defendants, changed their CD manufacturing process in an attempt to work around the '846 Patent. This action arose when defendants notified Philips that their U.S.-manufactured CDs no longer infringed the '846 Patent and that no further royalties would be paid or royalty reports submitted.

implicated in the instant motion for summary judgment. This motion, however, impacts defendants in the remaining three cases. They are 08–cv–4068: The ADS Group, American Media International, Ltd., Zomax Incorporated, Metatec International, Inc.; 08–cv–4070: Entertainment Distribution Company (USA) LLC, Entertainment Distribution Company, UMG Manufacturing & Logistics, Inc.; and 08–cv–4071: Optical Experts Manufacturing, Inc. These defendants join Cinram in its opposition to the present motion.

3. Cinram's Territory is Canada and the United States. At issue here are CDs Cinram made and sold in the United States. Cinram paid royalties to plaintiffs for CDs it made in or sold from Canada.

4. The independent expert's opinion regarding the essentiality of the '846 Patent is dated January 12, 2003.

Section 5 of the Agreement sets out the royalty requirements. The disputed language of the Agreement is found in Section 5.2 (last paragraph) which states:

[f]or the avoidance of doubt, in the event that the manufacture by Licensee of CD–Discs within the Territory would not infringe any of the Licensed Patents, Licensee shall have no obligation to report and pay royalties in respect of CD–Discs manufactured within the Territory and which are sold for final use within the Territory or imported (either by Licensee or by a third party) into a country where no Licensed Patents exist, for final use in such country.

Plaintiffs argue: (i) that the Agreement is unambiguous, including its provisions regarding the independent expert's determination of essentiality; (ii) that these provisions require Cinram to pay royalties and submit royalty reports; (iii) that essentiality and infringement are synonymous under the Agreement; (iv) that the Agreement's royalty exception clause, Section 5.2 (last paragraph), does not excuse Cinram from paying royalties; (v) because the independent expert has determined the '846 Patent to be essential.

The primary issue before the court is whether the independent expert's opinion is dispositive with regard to whether the defendants' CDs are royalty-bearing.[5]

### DISCUSSION

A district court grants summary judgment only "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c); *see Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). A party

seeking summary judgment bears the initial burden of demonstrating that there is no genuine issue as to a material fact. *Id.* at 323, 106 S.Ct. 2548. The nonmovant in turn bears the burden of producing "specific facts showing a genuine issue for trial." Fed R. Civ. P. 56(e); *see PepsiCo, Inc. v. Coca–Cola Co.,* 315 F.3d 101, 105 (2d Cir.2002). "The mere existence of a scintilla of evidence in support of the [nonmovant]'s position will be insufficient; there must be evidence on which the jury could reasonably find for the [nonmovant]." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 252, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

In an action for breach of contract, New York law requires proof of "(1) a contract; (2) performance of the contract by one party; (3) breach by the other party; and (4) damages." *First Investors Corp. v. Liberty Mut. Ins. Co.,* 152 F.3d 162, 168 (2d Cir.1998) (quoting *Rexnord Holdings, Inc. v. Bidermann,* 21 F.3d 522, 525 (2d Cir.1994)). The parties agree that the question of breach depends entirely on the court's determination of whether essentiality and infringement are synonymous under the Agreement.

Cinram argues: (i) because CDs produced using the post–2005 manufacturing process do not infringe the '846 Patent; (ii) defendants are exempt from royalty obligations under Section 5.2 (last paragraph); (iii) the independent expert's determination is not dispositive on the issue of infringement; (iv) Koninklijke has no standing to sue for breach of the Agreement because it does not own the '846 Patent; and (v) U.S. Philips has no standing to sue for breach because it was not a party to the Agreement.

---

**5.** In essence, Philips argues that if the CDs comply with the Standard Specifications, as they purport to, they *could not* have been produced without infringing the '846 Patent, whatever Cinram may say.

## A. *Standing*

 Cinram's argument that neither of the plaintiffs has standing to sue for breach of contract under the Agreement is both imaginative and wrong. Cinram's claim is that Koninklijke, although it is a party to the Agreement, did not own the '846 Patent at the time the Agreement was executed. Therefore, it had no right to license the '846 Patent to the defendant licensees. And because U.S. Philips, which owns the '846 Patent, was not a party to the Agreement, it also cannot sue for a breach.

Plaintiffs' rabbit from the hat is a belatedly produced "General Services Agreement" (GSA), accompanied by the declaration of a Philips in-house counsel. Plaintiffs contend that the GSA describes and authorizes the intercompany arrangements that validate Koninklijke's ownership rights in the conglomerate's intellectual property. Based on the GSA, and the Agreement itself, plaintiffs argue that: (i) U.S. Philips agreed to assign all of its patents to Koninklijke; (ii) as a result, Koninklijke had the right to assign the '846 Patent under the Agreement; and (iii) as a party to the Agreement, Koninklijke has standing to sue.

Cinram reads the GSA as doing no more than imposing an obligation on U.S. Philips to assign the '846 Patent to Koninklijke at some future (and unspecified) date. Cinram further argues that the GSA is not probative of whether an assignment in fact ever occurred. Cinram contends that plaintiffs' argument is "little more than a request that the court pierce the corporate veil to find standing for plaintiffs under the contract count," an equitable remedy that Cinram quite correctly argues cannot be invoked by a corporate plaintiff for its own benefit. *See Big East Entm't, Inc. v. Zomba Enter., Inc.,* 453 F.Supp.2d 788, 797 (S.D.N.Y.2006) ("[U]nder New York law, a parent corporation may not pierce the corporate veil it set up for its own benefit in order to advance the claims of its subsidiary.") (quoting *Feinberg v. Katz,* 2002 WL 1751135, at *5 (S.D.N.Y. July 26, 2002)).

On the issue of whether plaintiffs have standing to sue, the court finds neither party's rationale persuasive. Koninklijke has produced no written evidence giving it the authority to enter into license agreements on behalf of U.S. Philips. Moreover, the GSA cannot reasonably be read to constitute an assignment of ownership rights in the '846 Patent to Koninklijke. On the other hand, the court is aware of no law that requires a subsidiary to delegate the right to license intellectual property held in its name to its parent *in writing,* as opposed to giving its tacit consent in the course of intercorporate dealings.

 Any suggestion to the contrary runs counter to the rule of commercial reason. It is unthinkable that plaintiffs (parent and subsidiary) entered into the Agreement with Cinram with the intent that it be unenforceable. "The presumption in commercial contracts is that the parties were trying to accomplish something rational.... Common sense is as much a part of contract interpretation as is the dictionary or the arsenal of canons." *Fishman v. LaSalle Nat'l Bank,* 247 F.3d 300, 302 (1st Cir.2001). *See Carvel Corp. v. Diversified Mgmt. Group, Inc.,* 930 F.2d 228, 230 (2d Cir.1991) ("Under New York law, every contract contains an implied covenant of good faith and fair dealing."). *Cf. Dodge Street, LLC v. Livecchi,* 32 Fed. Appx. 607, 612 (2d Cir.2002) ("Under New York law, even if a party subjectively does not intend to be legally bound, if his actions, gauged by an objective standard, support the conclusion that he accepted the agreement, he will be legally bound to honor the contract."). The rule of commercial reason operates with equal force in

the case of Cinram. If U.S. Philips never intended for Koninklijke to have licensing authority, then Cinram itself has been manufacturing and selling unlicensed CDs, thereby passing infringement liability on to its own customers. *See* 35 U.S.C. § 271(a). *Cf. Quanta Computer, Inc. v. LG Electronics, Inc.*, — U.S. —, 128 S.Ct. 2109, 2115, 170 L.Ed.2d 996 (2008) ("The longstanding doctrine of patent exhaustion provides that the initial *authorized* sale of a patented item terminates all patent rights to that item." (emphasis added)).

Relying ultimately on common sense, the court finds that all necessary plaintiffs are parties to the lawsuit, namely U.S. Philips as the owner of the '846 patent, and Koninklijke as the Agreement's signatory. The court therefore rejects Cinram's standing argument and proceeds to an analysis of the underlying contract issue.

B. *Essentiality and Infringement Are Not Synonymous*

■ Plaintiffs claim that "[a]s the first clause of § 5.2 clearly states, as long as at least one essential patent remains on the list in the country of sale, Philips' licensees must pay royalties on products in the corresponding product categories because by definition the patent expert has determined that a standard-compliant CD–Disc would infringe the essential patent, absent a license." Plaintiffs further argue in their Reply Brief that the "real issue" before the court is whether the last paragraph of Section 5.2 "overrides" the meat of the Agreement, as Cinram contends. Plaintiffs insist that the independent expert is the only person who the Agreement au-

thorizes to make the determination of "whether 'the manufacture by Licensee of CD–Discs within the Territory would not infringe any of the Licensed Patents,' or whether the U.S. is a 'country in which no Licensed Patents exist,' ... and nothing in the Agreement gives Cinram or any other licensee the right to make such determinations."

Cinram argues that it is exempt from royalty obligations because of the last paragraph of Section 5.2. This paragraph provides—and it would be impossible to read it otherwise—that CDs manufactured in and sold for final use in the United States, if they do not infringe any of the Licensed Patents, are not royalty-bearing. This, according to Cinram, describes the CDs at issue, which were manufactured using an allegedly non-infringing process.[6]

■ Like plaintiffs with the GSA Agreement, Cinram has its own January surprise: a letter from the Department of Justice (DOJ) evaluating the antitrust implications of a similar pooling agreement.[7] The DOJ letter addresses a Philips DVD patent pool agreement in which the same independent expert who was called upon to make the essentiality determinations for the CD patent pool was given the broader responsibility of conducting an infringement analysis. To that end, the DVD pooling agreement required licensees to produce product information to the expert. The CD pooling agreement contains no similar requirement, and there is no suggestion that in this case the expert undertook an infringement analysis.

■ Despite plaintiffs' insistence that the DOJ letter is inadmissible parol evidence, I do not agree. The letter explains a curiosity of context—the unusual role

---

**6.** At oral argument, Cinram acknowledged that its autonomous declaration of non-infringement is not dispositive. Rather, it argues that the independent expert's determination of essentiality is also not conclusive, and

that Cinram deserves the opportunity to have the issue decided by a court of law.

**7.** The DOJ letter is dated December 16, 1998.

delegated to the independent expert—by bringing to light the antitrust considerations that shaped this particular term of the Agreement. *See Fireman's Fund Ins. Cos. v. Siemens Energy & Automation, Inc.,* 948 F.Supp. 1227, 1233 (S.D.N.Y. 1996) (evidence illuminating the context in which an agreement was executed is admissible where there is no explicit finding of ambiguity within the four corners of the contract).[8] The language of the Agreement considered as a whole, in light of the DOJ letter, reinforces the understanding that essentiality and infringement, as the terms are used in the Agreement, are distinct from one another.

### C. The Agreement Does Not Waive the Right to a Jury Determination of Infringement

Cinram argues that the independent expert's essentiality determination is not dispositive of whether royalties are due, rather it only defines the patents that remain on the list of Licensed Patents, that is, only a patent that is "essential" *and* "infringed" can trigger a royalty obligation under the Agreement. Cinram points out that the independent expert's essentiality determination is not relevant to whether a CD infringes the '846 Patent, and that the parties did not agree that the expert "would or could determine infringement." The expert compared the claims of the '846 Patent with the Standard Specifications—a separate and distinct inquiry from that of comparing the claims of the patent with the structural elements of the alleged

infringing CDs. *See Allen Eng. Corp. v. Bartell Indus., Inc.,* 299 F.3d 1336, 1345 (Fed.Cir.2002) (citing *Baxter Healthcare Corp. v. Spectramed, Inc.,* 49 F.3d 1575, 1583 (Fed.Cir.1995), and *Amhil Enters. Ltd. v. Wawa, Inc.,* 81 F.3d 1554, 1562 (Fed.Cir.1996)).

Moreover, Cinram argues that the Agreement itself does not equate essentiality with infringement. If it did, Section 5.2 (last paragraph) "would be impermissibly meaningless if a finding of essentiality alone established infringement" because it is clear that a product that does not infringe an "essential" patent does not trigger royalties. In other words, no royalties are due if the '846 Patent is not infringed. As Cinram states, "[g]iven the clear language of Section 5.2 (final paragraph) that there is no royalty obligation for certain CD–Discs that do not infringe any Licensed Patents (which can only be 'essential' patents) the fact that a Licensee entered into an Agreement providing for a determination by the 'independent' expert that a patent is 'essential' for compliance with Standard Specifications for CD–Discs cannot in itself mean that royalties attributable to that patent are necessarily due."

Cinram points out that "a Licensee's promise to pay patent royalties does not preclude a finding of non-infringement barring royalties," citing *MedImmune, Inc. v. Genentech, Inc.,* 549 U.S. 118, 127 S.Ct. 764, 166 L.Ed.2d 604 (2007), particularly where, as Cinram claims, the product does not infringe the patent in issue. Cinram argues that it had a good-faith belief

---

**8.** The parol evidence rule generally prohibits a court's consideration of extrinsic evidence in interpreting a contract unless the contract is found to be ambiguous. Some courts applying New York law have said that the determination of whether a contract is ambiguous is made solely based on a review of the contract itself. However, other courts have held that extrinsic evidence of the context in which a contract was executed is admissible because

the meanings of contract terms, even if seemingly unambiguous, are often informed by the circumstances surrounding their use. *Fireman's Fund,* 948 F.Supp. at 1233 ("There are suggestions that New York adheres to this view, although the possible inconsistency with the requirement that ambiguity be determined from the four corners of the contract remains unsolved.").

that its new manufacturing process did not infringe and that the non-infringing products were therefore not subject to royalties under the Agreement. Accordingly, Cinram ceased complying with plaintiffs' royalty requirements. At oral argument, Cinram conceded that a patent infringement suit, like this one, is a permissible recourse for plaintiffs. However, it is the breach of contract claim that Cinram says must now fail. Cinram argues that it could have only breached the Agreement insofar as its post–2005 CDs in fact *infringed* the '846 Patent, and that the manufacturer defendants are entitled to a judicial determination of that issue. The court agrees. No plausible reading of the Agreement committed the issue of infringement to the sole discretion of the independent expert.[9]

### ORDER

For the foregoing reasons, plaintiffs' motion for summary judgment on the breach of contract claims is *DENIED*. This decision applies to Case Nos. 08–cv–0515 (Docket Entry No. 67), 08–cv–4068, 08–cv–4070, and 08–cv–4071.

The court further *GRANTS*, without prejudice, the following motions to dismiss filed by the customer defendants: Case No. 7:08–cv–4068, Docket Entry Nos. 39 and 78; Case No. 7:08–cv–4071, Docket Entry No. 54; and Case No. 7:08–cv–7351, Docket Entry Nos. 21 and 34.

The court will terminate as *MOOT* Intuit's motion for judgment on the pleadings: Case No. 7:08–cv–4068, Docket Entry No. 122.

SO ORDERED

---

9. Section 13.7 of the Agreement states that *"[a]ny* dispute between the parties hereto in connection with this Agreement ... shall be submitted to any state or federal courts in The State of New York ...." (emphasis added).