ROBERT BOSCH LLC, Plaintiff,

v.

ALBEREE PRODUCTS, INC., API Korea Co., Ltd., Saver Automotive Products, Inc., and Costco Wholesale Corporation, Defendants.

Costco Wholesale Corporation, Counter–Plaintiff,

· v.

Robert Bosch LLC and Robert Bosch GMBH, Counter–Defendants.

Civil Action No. 12–574–LPS

United States District Court, D. Delaware.

Signed March 16, 2016

Richard L. Horwitz, David E. Moore, Bindu A. Palapura, Stephanie E. O'Byrne, Potter Anderson & Corroon LLP, Wilmington, DE. Mark A. Hannemann, Shearman & Sterling, LLP, Rose Cordero Prey, Ksenia Takhistova, Kenyon & Kenyon LLP, New York, NY. Attorneys for Plaintiffs.

Mary B. Graham, Thomas Curry. Morris, Nichols, Arsht & Tunnell LLP, Wilmington, DE. James W. Dabney, Diane E. Lifton, Walter M. Egbert, III, Richard M. Koehl, Stephen Kenny, Greta A. Fails, Erik Huestis, Stefanie Lopatkin, Hughes Hubbard & Reed LLP, New York, NY. Attorneys for Defendant Costco Wholesale Corporation.

Sean T. O'Kelly, O'kelly Ernst & Bielli, LLC, Wilmington, DE. Robert J. Kenney, Michael J. Smith, John D.V. Ferman, Birch, Stewart, Kolasch & Birch, LLP, Falls Church, VA. Attorneys for Defen-

dants Alberee Products, Inc., API Korea Co., Ltd., and Saver Automotive Products, Inc.

## MEMORANDUM OPINION

STARK, United States District Judge:

On May 4, 2012, plaintiff Robert Bosch LLC ("Bosch LLC" or "Plaintiff") filed a patent infringement action against defendants API Korea Co., Ltd. ("API") and Alberee Products, Inc. ("Alberee") asserting U.S. Patent Nos. 6,523.218 ("the '218 patent"), 6,530,111 ("the '111 patent"), 6,553,607 ("the '607 patent"), 6,611,988 ("the '988 patent"). 6.675,434 ("the '434 patent"), 6,836,926 ("the '926 patent"). 6,944,905 ("the '905 patent"), 6,973.698 ("the '698 patent"). 7,228,588 ("the '588 patent"). 7,293,321 ("the '321 patent"). 7,523.520 ("the '520 patent"), and 7.484.264 ("the '264 patent"). (D.I. 1)[1] On January 18, 2013, Bosch LLC filed an Amended Complaint adding Saver Automotive Products, Inc. ("Saver") as a defendant. (D.I. 38) On February 5, 2014, Bosch LLC filed an additional patent infringement action against defendants API, Alberee. and Saver, asserting U.S. Patent No. 6,292,974 ("the '974 patent"). (C.A. No. 14–142–LPS, D.I. 1) On September 10, 2014, the two patent infringement actions were consolidated. (D.I. 67) On October 9, 2014, Bosch LLC filed a Consolidated Amended Complaint against API, Alberee, Saver, and Costco Wholesale Corporation ("Costco") (collectively, "Defendants"), asserting U.S. Patent Nos. ("the '823 patent"), 6.668,419 ("the '419 patent"), 7,941.891 ("the '891 patent"), and 8,544.136 ("the '136 patent), as well as all of the previously asserted patents. (D.I. 84) On October 31, 2014, Bosch LLC filed a Second Amended Complaint ("SAC") asserting U.S. Patent No. 8.272,096 ("the '096 patent") as well as all of the previously asserted patents against Defendants. (D.I. 95)

On September 30, 2015, Costco filed a Counterclaim, adding Robert Bosch GmbH ("Bosch GmbH") as a counterclaim defendant. (D.I. 244) Bosch GmbH filed a Motion to Dismiss for Lack of Jurisdiction Over the Person on December 4, 2015 (D.I. 263), but withdrew its motion on January 15, 2016 (D.I. 283), and is now a counterclaim defendant and counterclaim plaintiff [revised March 28, 2016] in this case (see D.I. 311).

Among the several issues pending before the Court is Costco's Motion for Summary Judgment as to the Goodyear Hybrid Wiper Product ("Summary Judgment Motion"). (D.I. 158) Bosch LLC and Costco completed briefing on the Summary Judgment Motion on May 29, 2015 (D.I. 159; D.I. 177; D.I. 188), and Defendants API. Alberee, and Saver have joined in Costco's submissions (D.I. 163; D.I. 179; D.I. 189). The Court heard argument on the Summary Judgment Motion on June 8, 2015. (See D.I. 204) ("Tr.") On June 24, 2015, the Court ordered supplemental briefing (D.I. 201), which the parties completed on July 24, 2015 (D.I. 211; D.I. 212; D.I. 214; D.I. 216; D.I. 229; D.I. 230). The Summary Judgment Motion is directed to multiple issues. This Memorandum Opinion addresses three of them; (1) noninfringement of the '607 and '096 patents by the Goodyear Hybrid Product; (2) noninfringement of the '698 patent by the Goodyear Hybrid Product; and (3) noninfringement of the '988 patent by the Goodyear Hybrid Product. For the reasons explained below, the Court will grant in part the Summary Judgment Motion with respect to these three issues. The Court will deny without prejudice the re-

---

1. All D.I. references in this opinion refer to C.A. No. 12–574–LPS unless otherwise specified.

mainder of the Summary Judgment Motion in light of the fact that, for the most part, this case will be stayed.

The Court also addresses Bosch LLC's Motion for Relief from the Court's December 22, 2015 Order ("Motion for Relief") (D.I. 284) and how the case will proceed.

## I. FACTUAL BACKGROUND

The '607 and '096 patents claim side-lock wiper systems for motor vehicles. (D.I. 161 Exs. 16. 24) The '988 and '698 patents claim wiper blades for motor vehicles. (D.I. 161 Exs. 17, 20) All four of these patents were originally assigned to Bosch GmbH. (D.I. 161 Exs. 16, 17, 20, 24) Bosch GmbH, the parent of Bosch LLC (*see* D.I. 311 at ¶ 4), assigned these four patents to Bosch LLC in 2010 ('607 and '698 patents).2011 ('988 patent), and 2014 ('096 patent). (D.I. 188 Ex. 2 at BLLC1241453–56, BLLC1241460–65) In doing so, Bosch GmbH retained for itself "a nonexclusive license under the Contract Patents," including "the right to sublicense the Contract Patents in the framework of manufacturing licenses or patent cross licenses." (D.I. 216 Ex. A at Ex. 1 at ¶ 5)

Bosch LLC sells in the United States original equipment side-lock wiper systems that practice the '607 and '096 patents, for installation by domestic car manufacturers on vehicles sold in the United States.[2] The Bosch group of companies enters into agreements with domestic car manufacturers. For example, Section 19.01 of the Production Purchasing Global Terms and Conditions, "the global terms-and-conditions agreement applicable to sales by the

Bosch group of companies to [redacted] and its affiliates" (D.I. 348 at 1), provides:

The Supplier will grant Licenses on the bases specified below unless an Earlier Agreement (as defined in Section 4.02) states otherwise. A License is a license granted in all cases to the Buyer and its Related Companies on a nonexclusive, worldwide basis, to make, have made, use, have used, sell and import manufactures, compositions, machines and processes covered by the Intellectual Property Rights of the Supplier.

(D.I. 347 Ex. 1 at BGMBH0013576–77)

Bosch GmbH sells outside of the United States original equipment side-lock wiper systems that practice the '607 and '096 patents, for installation by foreign car manufacturers on vehicles to be imported into the United States.[3] The record includes a Representative Agreement [4] between Bosch GmbH and the foreign car manufacturers. Article XII(1) of the Representative Agreement between Bosch GmbH and the foreign car manufacturers provides:

1. The Supplier shall be liable for any claim which, by the use of goods according to the terms of the contract, result from the infringement of industrial property rights ... if at least one of such industrial property rights of the same industrial property rights family [is] published either in the supplier's mother country ... or the United States of America.

2. The supplier shall hold the purchaser and his purchaser's customers free

---

**2.** These include the BMW X3, Ford Five Hundred, Ford Freestyle, and Mercury Montego.

**3.** These include the BMW i3, BMW 5–series, BMW 6–series, BMW 7–series, Mercedes C-class, *Mercedes CL-class, Mercedes CLS-*class, Mercedes E-class, Mercedes GLK-class, Mercedes S-class, Porsche Cayenne, and Volkswagen Touareg.

**4.** Bosch GmbH represents that its agreements with foreign car manufacturers "closely follow the terms recommended by the Verband der Automobilindustrie," which terms (hereinafter, "Representative Agreement") it produced in lieu of its confidential agreements. (D.I. 216 Ex. A at ¶ 6)

and harmless of all liabilities from making use of such industrial property rights.

(D.I. 211 Ex. 3 at Ex. 2 at 3)

The Goodyear Hybrid Product is a wiper blade which can be used to replace the worn-out wiper blades of the original equipment side-lock wiper systems sold by Bosch LLC and Bosch GmbH. (*See* D.I. 95 at ¶¶ 429–33)

## II. LEGAL STANDARDS

Pursuant to Rule 56(a) of the Federal Rules of Civil Procedure. "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." The moving party bears the burden of showing the absence of a genuine issue of material fact. *See Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 106 S.Ct. 1348, 89 L.Ed.2d 538. 585–86 (1986). An assertion that a fact cannot be—or, alternatively, is—genuinely disputed must be supported either by citing to "particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials," or by "showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1)(A) & (B). If the moving party has carried its burden, the nonmovant must then "come forward with specific facts showing that there is a genuine issue for trial." *Matsushita*, 475 U.S. at 587, 106 S.Ct. 1348 (internal quotation marks omitted). The Court will "draw all reasonable inferences in favor of the non-moving party, and it may not make credibility determinations or weigh the evidence." *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150, 120 S.Ct. 2097, 147 L.Ed.2d 105 (2000).

To defeat a motion for summary judgment, the nonmoving party' must "do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita*, 475 U.S. at 586, 106 S.Ct. 1348; *see also Podobnik v. U.S. Postal Serv.*, 409 F.3d 584, 594 (3d Cir.2005) (stating party' opposing summary judgment "must present more than just bare assertions, conclusory allegations or suspicions to show the existence of a genuine issue") (internal quotation marks omitted). However, the "mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment;" a factual dispute is genuine only where "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Id.* at 249–50, 106 S.Ct. 2505 (internal citations omitted); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986) (stating entry of summary judgment is mandated "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial"). Thus, the "mere existence of a scintilla of evidence" in support of the nonmoving party's position is insufficient to defeat a motion for summary' judgment; there must be "evidence on which the jury could reasonably find" for the nonmoving party. *Anderson*, 477 U.S. at 252, 106 S.Ct. 2505.

## III. DISCUSSION

### A. Non–Infringement of the '607 and '096 Patents

■ The SAC alleges *indirect*—rather than direct—infringement , of the '607 and '096 patents by Defendants based on direct infringement by Defendants' customers when those customers replace the wiper blades in their original equipment side-lock wiper systems. (D.I. 95 at ¶¶ 80, 434) Defendants seek summary judgment of non-infringement of the '607 and '096 patents by the Goodyear Hybrid Product on the basis that there is no direct infringement by Defendants' customers as a matter of law, and, therefore, there can be no indirect infringement by Defendants. *See Limelight Networks, Inc. v. Akamai Techs., Inc.,* —— U.S. ——, 134 S.Ct. 2111, 2117, 189 L.Ed.2d 52 (2014) ("[W]here there has been no direct infringement, there can be no inducement of infringement under § 271(b)."); *Aro Mfg. Co. v. Convertible Top Replacement Co.,* 365 U.S. 336, 341, 81 S.Ct. 599, 5 L.Ed.2d 592 (1961) ("[T]here can be no contributory infringement in the absence of a direct infringement."). Defendants insist there is no direct infringement of the '607 and '096 patents by Defendants' customers either because: (a) Plaintiff has exhausted its rights with respect to these patents by selling the claimed side-lock wiper systems in the United States to domestic car manufacturers and authorizing their importation into the United States by foreign car manufacturers, or (b) alternatively with respect to the foreign car manufacturers,

because Plaintiff has licensed the importation and sale of the claimed side-lock wiper systems into the United States without restriction. As a result, Defendants argue. Defendants' customers' use of the Goodyear Hybrid Product, which consists of only a component (the wiper blade) of the side-lock wiper systems claimed by the '607 and '096 patents, does not constitute direct infringement of the '607 and '096 patents under the doctrine of permissible repair. *See Aro,* 365 U.S. at 341, 81 S.Ct. 599 (explaining that replacement of wornout convertible top material did not infringe patent claiming convertible top assembly); *Husky Injection Molding Sys. Ltd. v. R & D Tool & Eng'g Co.,* 291 F.3d 780, 788 (Fed.Cir.2002) ("[T]here is no infringement [of the patented system] if the particular part is readily 'replaceable' ").

Plaintiff Bosch LLC counters that it has neither exhausted nor licensed its rights under the '607 and '096 patents, arguing that the permissible repair doctrine is inapplicable in this case.[5] While Bosch LLC concedes that the side-lock wiper systems installed on *domestic* vehicles were the subject of authorized first sales in the United States, it argues that the side-lock wiper systems installed on *imported* vehicles—imported into the United States by foreign car manufacturers who first purchased the side-lock wiper systems from Bosch GmbH overseas—were not. (*See* D.I. 177 at 14) Hence, Bosch LLC argues that it has not exhausted its rights with respect to the original equipment side-lock

---

**5.** Plaintiff further argues that "[o]ther infringers have asserted the same defense, without success," pointing to an opinion from the Northern District of Illinois denying a defendant's motion for summary judgment of non-infringement of Bosch LLC's '111 and '607 patents based on exhaustion. (D.I. 177 at 12 n.8) (citing *Robert Bosch LLC v. Trico Prods. Corp.,* 2014 WL 2118609 (N.D.Ill. May 21, 2014)) However, Plaintiff fails to mention that

the court in that case denied the summary judgment motion because it had *"sufficient doubts* about whether [*Warner & Swasey Co. v. Held,* 256 F.Supp. 303, 311 (E.D.Wis.1966), and *R2 Med. Sys., Inc. v. Katecho, Inc.,* 931 F.Supp. 1397 (N.D.Ill.1996) (following *Warner & Swasey*), which adopted Plaintiff's view of exhaustion] were correctly decided to withhold ruling." *Trico,* 2014 WL 2118609, at *4 (emphasis added).

wiper systems first sold to foreign car manufacturers abroad. Moreover, according to Bosch LLC, its parent, Bosch GmbH, never licensed the foreign car manufacturers to sell the side-lock wiper systems in the United States; nor could it have done so, because when Bosch GmbH transferred the asserted patents to Bosch LLC, Bosch GmbH only expressly retained the right to sub-license in "the framework of manufacturing licenses or patent cross licenses." (D.I. 216 at 4) (quoting D.I. 216 Ex. A at Ex. 1 at BLLC1241437 ¶ 5)

▮ The Court agrees with Bosch LLC that it has not surrendered its rights under the '607 and '096 patents due to exhaustion, but further agrees with Defendants that Plaintiff *has* surrendered these rights due to licensing.

> The doctrine of patent exhaustion (or 'first sale' doctrine) addresses the circumstances in which a sale of a patented article (or an article sufficiently embodying a patent), when the sale is made or authorized by the patentee, confers on the buyer the 'authority' to engage in acts involving the article, such as resale, that are infringing acts in the absence of such authority.

*Lexmark Int'l, Inc. v. Impression Prods., Inc.*, 816 F.3d 721, 726, 2016 WL 559042, at *1 (Fed.Cir. Feb. 12, 2016); *see also Bowman v. Monsanto Co.*, — U.S. —, 133 S.Ct. 1761, 1766, 185 L.Ed.2d 931, 185 L.Ed.2d 941 (2013) ("[T]he initial authorized sale of a patented item terminates all patent rights to that item.") (internal quotation marks omitted) (quoting *Quanta Computer, Inc. v. LG Elecs., Inc.*, 553 U.S. 617, 625, 128 S.Ct. 2109, 170 L.Ed.2d 996 (2008)). However, as the Federal Circuit (sitting *en banc*) recently explained:

a foreign sale of a U.S.-patented article, when made by or with the approval of the U.S. patentee, does not exhaust the patentee's U.S. patent rights in the article sold, even when no reservation of rights accompanies the sale. Loss of U.S. patent rights based on a foreign sale remains a matter of express or implied license.

*Lexmark*, 2016 WL 559042, at *47.[6] Because the side-lock wiper systems subject to the '607 and '096 patents were first sold outside of the United States, Defendants must show the existence of a license in order to rely on the permissible repair defense.

As stated by the Supreme Court in *De Forest Radio Telephone & Telegraph Co. v. United States*, 273 U.S. 236, 241, 47 S.Ct. 366, 71 L.Ed. 625 (1927):

> [a]ny language used by the owner of the patent or any conduct on his part exhibited to another, from which that other may properly infer that the owner consents to his use of the patent in making or using it, or selling it, upon which the other acts, constitutes a license, and a defense to an action for a tort.

Here, Article XII(1) of the Representative Agreement between Bosch GmbH and foreign car manufacturers clearly authorizes the foreign car manufacturers to sell the side-lock wiper systems without any geographical restrictions, by ensuring that Bosch LLC's parent, Bosch GmbH, will be responsible for any damages arising from a patent infringement suit brought by Bosch LLC. (*See* D.I. 211 Ex. 3 at Ex. 2 at 3) This indemnification conveys the requisite freedom from suit commensurate with the grant of a license. *See generally TransCore, LP v. Elec. Transaction Consultants Corp.*, 563 F.3d 1271, 1275–76

---

**6.** The parties submitted post-hearing letter briefs concerning the recent *Lexmark* decision. (*See* D.I. 346; D.I. 347; D.I. 348)

(Fed.Cir.2009) ("[A] patentee, by license or otherwise, cannot convey an affirmative right to practice a patented invention by way of making, using, selling, etc.; the patentee can only convey a freedom from suit.... The real question ... is not whether an agreement is framed in terms of a 'covenant not to sue' or a 'license.' That difference is only one of form, not substance—both are properly viewed as 'authorizations.' ").

■ Bosch LLC's assertion that there is no evidence that Bosch GmbH itself is not licensed to authorize sales in the United States does not change the nature of the indemnity found in Article XII(1) of the Representative Agreement, particularly in light of Bosch LLC's representation in this Court that it will not sue the foreign car manufacturers or Bosch GmbH.[7] "[There is] no law that requires a subsidiary to delegate the right to license intellectual property held in its name to its parent in writing, as opposed to giving its tacit consent in the course of intercorporate dealings." *Koninklijke Philips Elecs. N.V. v. Cinram Int'l Inc.*, 603 F.Supp.2d 735, 739 (S.D.N.Y.2009). The absence of any restrictions on Bosch GmbH's ability to sublicense the foreign car manufacturers' sale of the original equipment side-lock wiper systems is consistent with the Production Purchasing Global Terms and Conditions in which *both* Bosch entities grant [redacted] and its affiliates "a license granted in all cases to the Buyer and its Related Companies on a nonexclusive, *worldwide* basis, to make, have made, use, have used, sell and import." (D.I. 347 Ex. 1 at 11–12 (emphasis added); *see also* D.I. 348 at 1) Thus, the Court concludes that Bosch LLC licensed its parent, Bosch GmbH, to au-

thorize sales of the side-lock wiper systems without any geographical restrictions.

■ Having found the existence of a license, the Court next considers the applicability of the permissible repair doctrine. The permissible repair doctrine ensures "that a license to use a patented combination includes the right to preserve its fitness for use so far as it may be affected by wear or breakage." *Aro*, 365 U.S. at 345, 81 S.Ct. 599. Plaintiffs contend that the Goodyear Hybrid Product is not shielded from infringing the '607 and '096 patents by the permissible repair doctrine because it infringes the claims of patents-in-suit *other* than the '607 and '096 patents. Yet the permissible repair doctrine would only shield Defendants' customers from infringing the '607 and '096 patents if *those* patents separately claimed the wiper blades embodied by the Goodyear Hybrid Product, which they do not. Plaintiffs' reliance on the distinction made in permissible repair cases between unpatented and patented components for the proposition that Costco's customers directly infringe the *'607 and '096* patents when replacing a component claimed only by *other* patents not at issue in this motion, is unpersuasive. *See, e.g., Aro*, 365 U.S. at 345, 81 S.Ct. 599 ("No element, not itself separately patented, that constitutes one of the elements of a combination patent is entitled to patent monopoly, however essential it may be to the patented combination and no matter how costly or difficult replacement may be."); *Porter v. Farmers Supply Serv., Inc.*, 790 F.2d 882, 886 (Fed.Cir.1986) ("[A] licensed user may replace any element no matter how essential it may be to the patented combination, as long as the re-

---

7. Bosch LLC does not clearly and affirmatively deny that Bosch GmbH has a license to authorize sales of the side-lock wiper system in the United States, but rather repeatedly points to the lack of evidence of such a license. (*See, e.g.,* D.I. 216 at 3) ("But there is

no evidence that Bosch GmbH has ever granted such a license, express or implied."); Tr. at 14 ("There has been no license in the record that importing or the selling of the wiper system was authorized by Bosch LLC, the patent owner."))

placed element is not itself, i.e., separately, claimed.") (internal quotation marks and citation omitted); *LifeScan Scot., Ltd. v. Shasta Techs., LLC,* 734 F.3d 1361 (Fed. Cir.2013) ("[I]f a patent had actually issued on the strips, the patentability of the strips could be relevant to exhaustion."). The cases cited by Plaintiffs stand for the unremarkable proposition that the permissible repair doctrine cannot shield from *all* infringement liability the replacement of worn-out components in a product covered by a combination patent when those worn-out components are separately patented.

■ Analysis of infringement liability under the permissible repair doctrine must be undertaken *with respect to the patent at issue,* as opposed to other patents not at issue. That is, liability for infringing a combination patent by replacing a worn-out component of the combination turns on whether that component is claimed *by that combination patent. See generally, e.g., Aro,* 365 U.S. at 339, 81 S.Ct. 599 ("The fabric with which we deal here is an unpatented element *of respondent's combination patent,* which covers only the combination of certain components, one of which is a 'flexible top material.' The patent makes no claim to invention based on the fabric or on its shape, pattern or design. Whether the fabric or its shape might have been patentable is immaterial, for the fact is that neither the fabric nor its shape has been patented. No claim that the fabric or its shape, pattern or design constituted the invention was made in the application or included in the patent.") (internal citations omitted; emphasis added)

■ Just as the existence of a separate patent on a *component* of a patented combination does not render a licensee of the patented combination liable for infringement of the patented *combination,* the existence of a separate patent on a component of a licensed combination patent does not defeat the permissible repair doctrine

with respect to the licensed combination patent. *See generally Quanta Computer,* 553 U.S. at 634, 128 S.Ct. 2109 ("The sale of a device that practices patent A does not, by virtue of practicing patent A, exhaust patent B. But if the device practices patent A while substantially embodying patent B, its relationship to patent A does not prevent exhaustion of patent B. . . . While each Intel microprocessor and chipset practices thousands of individual patents, including some LGE patents not at issue in this case, *the exhaustion analysis is not altered by the fact that more than one patent is practiced by the same product.* The relevant consideration is whether the Intel Products that partially practice a patent—by, for example, embodying its essential features—exhaust *that* patent.") (first emphasis added). Thus, patents other than the '607 and '096 patents are irrelevant to the question of whether the Goodyear Hybrid Product directly infringes the '607 and '096 patents.

In sum, the Court agrees with Defendants regarding the applicability of the permissible repair doctrine to the '607 and '096 patents, and thus, the absence of any direct infringement of those patents by the Goodyear Hybrid Product. As in *Everpure, Inc. v. Cuno, Inc.,* "[s]ummary judgment is appropriate here because there can be neither contributory nor induced infringement when, because of the permissible repair doctrine, there has been no direct infringement." 875 F.2d 300, 302 (Fed.Cir.1989). Accordingly, the Court will grant Defendants' Summary Judgment Motion with respect to non-infringement of the '607 and '096 patents by the Goodyear Hybrid Product.

**B. Non–Infringement of the '698 Patent**

Plaintiff does not oppose summary judgment of non-infringement of the '698 patent by the Goodyear Hybrid Product. (D.I. 212 at 1; Tr. at 42–43) Accordingly,

the Court will grant Defendant's Summary Judgment Motion with respect to non-infringement of the '698 patent by the Goodyear Hybrid Product.

### C. Non–Infringement of the '988 Patent

Plaintiff does not oppose summary judgment of non-infringement of the '988 patent by the Goodyear Hybrid Product. (D.I. 212 at 1; Tr. at 165) Accordingly, the Court will grant Defendant's Summary Judgment Motion with respect to non-infringement of the '988 patent by the Goodyear Hybrid Product.

### D. Remaining Portions of Summary Judgment Motion

The Summary Judgment Motion raises other issues, including non-infringement of the '926 patent and arguments relating to claim construction. (See D.I. 158; D.I. 159) The Court does not today reach the merits of those issues. Given that this case is going to be stayed while the Court determines whether it should be dismissed as a sanction for violation of discovery orders, as explained below, the Court will deny the remainder of the Summary Judgment Motion without prejudice to renew if or when the stay is lifted.[8]

## IV. FURTHER PROCEEDINGS

Over the course of this case, the Court has conducted numerous discovery teleconferences. (See D.I. 203; D.I. 277; D.I. 349) Among the issues that have been repeatedly addressed are the failure of Bosch LLC to produce discovery ordered by the Court, for reasons including Bosch LLC's insistence that the documents are in the control of its parent Bosch GmbH and Bosch GmbH for some time refused to provide them to Bosch LLC. (See D.I. 285 at 1) The Court has entered several orders relating to this ongoing dispute. (See D.I. 277 at 20–23; D.I. 274; D.I. 349 at 25–28; D.I. 350)[9]

Costco has asked to file a motion to dismiss as a sanction for Plaintiffs' conduct. (See D.I. 345) Costco also asks that the case be stayed until the Court determines whether the case should be dismissed. (See id. at 1) Plaintiffs' position is that the Court should determine that nothing sanctionable has occurred, modify the schedule if necessary', and permit this case to proceed. (See D.I. 336 at 1, 7; D.I. 345) Plaintiffs take this position despite the Court's statements that there has been "a failure by [Bosch] LLC to comply with the order" and that "Costco is entitled to some relief possibly including dismissal of the entire case." (D.I. 349 at 25)

In this regard, Bosch LLC has filed its Motion for Relief. (D.I. 284) The Court's December 22, 2015 Order required Bosch LLC to produce, on or before January 8, 2016, "all agreements between Robert Bosch GmbH and OEMs relating to wipers or wiper systems, the OEM specifications for wipers or wiper systems to be supplied, and related development documents, including meeting minutes and correspondence." (D.I. 274 at 2) Bosch LLC's Motion for Relief will be denied. It is untimely.[10] Moreover, on the merits, it

---

8. By separate Memorandum Order issued today, the Court is denying the Motion to Dismiss the Second Amended Complaint for Lack of Personal Jurisdiction filed by Defendant API Korea Co., Ltd. (D.I. 200) In light of the stay, the Court will also deny without prejudice Bosch LLC's Motion to Dismiss for Failure to State a Claim certain of Costco's counterclaims. (D.I. 252)

9. A detailed recitation of the issue and its history is set forth in Costco's brief in opposition to Bosch LLC's Motion for Relief. (D.I. 315 at 1–8)

10. Although entitled a motion for relief, Bosch LLC's motion is essentially a motion for reargument. (See, e.g., D.I. 274 at 1) (requesting that Court vacate its order) As such, it was due no later than fourteen (14)

largely rehashes arguments the Court has already considered and rejected, which is not a meritorious basis for reargument. *See Flash Seats, LLC v. Paciolan, Inc.*, 2011 WL 4501320, at *2 (D.Del. Sept. 28, 2011), *aff'd.* 469 Fed.Appx. 916 (Fed.Cir. 2012). Other portions of the motion are inconsistent with prior representations (e.g., challenging the language of the December 22, 2015 Order to which Bosch LLC agreed as to form, and contending Costco seeks a great number of documents despite previous suggestions only a few documents were at issue). (*Compare* D.I. 336 at 4 *with* D.I. 272 Ex. 1 at 1 *and* D.I. 277 at 13) The Court does not view Bosch GmbH's recent decision to drop its jurisdictional defense to being a party here to be "new" evidence of a type that warrants the relief sought by Bosch LLC in its Motion for Relief.

The Court agrees that Costco's proposal for how this case should now proceed is appropriate under the circumstances. Accordingly, the Court will enter an Order permitting Costco to file and the parties to brief a motion to dismiss and will stay essentially the remainder of the case until the Court decides the motion to dismiss.[11]

## V. CONCLUSION

An Order, consistent with the analysis above, will be entered.

days after the order being challenged, which was January 5, 2016. *See* D. Del. LR 7.1.5. Instead, Bosch LLC waited until ten days later, January 15, to file its motion. While undoubtedly Bosch LLC's position was made more difficult due to the intervening holidays (*see* D.I. 274 at 1 n.1), this was entirely foreseeable when the Court entered its order on December 22 (setting a compliance deadline of January 8), and at no point did Bosch LLC request an extension of time (either for compliance with the order or to formulate its motion for reconsideration).

11. To the extent the parties are in disagreement as to whether Plaintiffs have now complied with the discovery orders (*see* D.I. 353; D.I. 354), they should continue to work to resolve their differences. Should they be unable to do so, they may request a discovery teleconference pursuant to the Court's procedures.